1

1          IN THE UNITED STATES DISTRICT

2      FOR THE WESTERN DISTRICT OF TENNESSEE

3              WESTERN DIVISION

4  _____

5  EQUAL OPPORTUNITY COMMISSION,

6              Plaintiff,

7  vs.                              No. 2:22-cv-02668-SHL

8  SUPREME STAFFING, LLC.,

9              Defendant.

10

11 _____

12

13

14          TEAMS SCHEDULING CONFERENCE

15

16      BEFORE THE HONORABLE SHERYL H. LIPMAN

17

18                  Thursday

19            19th of January, 2023

20

21

22

23

24          CANDACE S. COVEY, CRR, RMR
                 OFFICIAL REPORTER
25         FOURTH FLOOR FEDERAL BUILDING
             MEMPHIS, TENNESSEE 38103

            UNREDACTED TRANSCRIPT

2

1                      A P P E A R A N C E S

2

3     For the Plaintiffs:

4     ROSALYN GRIFFIN
      AMY BLACK
5     NEIL HILLIS
      1407 Union Avenue
6     Memphis, TN 38104

7

8     For the Defendants:

9     ZACHARY BUSEY
      Baker Donelson
10    165 Madison Avenue
      Suite 2000
11    Memphis, TN 38103

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNREDACTED TRANSCRIPT

```
 1                      Thursday

 2                  January 19, 2023

 3        The Teams Scheduling Conference in this case began on

 4   this date, Thursday, 19th day of January, 2023, at 2:00

 5   p.m., when and where evidence was introduced and proceedings

 6   were had as follows:

 7

 8             ----------------------

 9        THE COURT:  Let's see if we've got folks for the

10   2:00 scheduling conference.

11        MS. GRIFFIN:  Rosalyn Griffin here on behalf of

12   the EEOC.

13        THE COURT:  Thank you.

14        MR. BUSEY:  Zachary Busey on behalf of the

15   Defendants, Your Honor.

16        THE COURT:  Let's stick with the EEOC first.  I

17   think we've got other folks here for them.  I see Ms. Black

18   is here for the EEOC.

19        MS. BLACK:  Yes, good afternoon.

20        THE COURT:  Good afternoon.

21        And Mr. Hillis?

22        MR. HILLIS:  Yes, Your Honor.

23        THE COURT:  I see Mr. Jacobson and Ms. Glover,

24   but they're for the next matter, not this one.

25             Anyone else here for the EEOC?
```

UNREDACTED TRANSCRIPT

4

 1          **MS. GRIFFIN:**  No, Your Honor.

 2          **THE COURT:**  Do you expect anyone else?

 3          **MS. GRIFFIN:**  We may have one other attorney,

 4   Ms. Ashley Finch joining.

 5          **THE COURT:**  Can we proceed without her?

 6          **MS. GRIFFIN:**  Yes, Your Honor.

 7          **THE COURT:**  Okay.  And then all right.

 8          For the Defendants.

 9          **MR. BUSEY:**  Zachary Busey, Your Honor, and it

10   will just be me today.

11          **THE COURT:**  I think we can do it with just you.

12          All right.  So I know you all wanted to put this

13   off, which was -- I guess it was a little unusual.  Usually I

14   -- I've had before situations where the Defendants want to

15   put off the case pending a motion to dismiss.  I don't

16   usually get it where the plaintiff also wants to put off the

17   case pending the motion to dismiss.  I'll tell you I don't

18   like to do it and have rarely done it in any case.  And I

19   don't see any reason to do it here, as I said in the order.

20   I mean, does anyone want to revisit that issue?

21          **MR. BUSEY:**  Your Honor, Defendants would, briefly

22   and not to simply restate what was in the motion, but just to

23   highlight the -- a bit more detail now with the proposed

24   scheduling order in the backdrop, it's not only the motion to

25   dismiss but also a pretty substantial scope of the discovery

UNREDACTED TRANSCRIPT

1 dispute that Defendants believe would require some additional

2 briefing, and so that's the reason at the end of the day.  It

3 isn't just the threshold issues in the motion to dismiss.

4 It's some substantial discovery disputes that follow quickly

5 and will arise very quickly in discovery itself.

6 　　　　**THE COURT:**  I'll tell you that the only time I've

7 put something off because of a motion to dismiss is if it is

8 pretty crystal clear the Defendants are going to be

9 successful in their motion to dismiss.  And that is not the

10 case at all from my cursory review of the motion and the

11 plaintiff's response.  So while I understand there may be a

12 lot of work here, you know, litigation is expensive.  Cost of

13 doing business.  I just don't see any reason to, even if

14 there's a significant issue coming, I don't see any reason to

15 delay this.

16 　　　　I'm curious about why the plaintiffs joined in

17 the motion.  Is there something from the plaintiff's

18 standpoint that I'm missing?

19 　　　　**MS. GRIFFIN:**  Well, the plaintiff didn't join in

20 the motion, Your Honor.  We just did not oppose the motion.

21 We understood that the case management conference was

22 scheduled for today.  The defendant's response to the reply

23 to the plaintiff's response wasn't due until Monday.

24 　　　　And so we thought that we would have more time to

25 let them get their reply in and maybe get an early ruling

UNREDACTED TRANSCRIPT

6

1     from the Court before we did the case management conference

2     because we knew that there were issue with the class and some

3     other things that they brought up in their motion to dismiss.

4     And so the plaintiffs weren't necessarily on board with

5     staying discovery or staying anything.  We just wanted to

6     afford the Defendants the opportunity to get their reply in.

7          THE COURT:  Okay.  I guess let me hear -- as I

8     recall the motion and again, it shows up in the proposed

9     scheduling order there were -- this date of March 9th, I

10    think was mentioned in the motion itself.  So it was a -- and

11    maybe I'm getting this wrong, but I think it was a motion to

12    either stay the case or to delay the scheduling conference

13    until after a certain date.  And I think it may have been

14    this March 9th date.  I don't remember but why this date out

15    of the blue?  What's the significance of March 9th?

16         MR. BUSEY:  That's defendant's position that I'm

17    ready to be heard on that, if I may.

18         THE COURT:  Sure.

19         MR. BUSEY:  So certainly not to -- well, just to

20    add a little bit more context, the unopposed motion was

21    either to reset it until -- and it happened to be just later

22    in February was the kind of not arbitrary but the date we

23    picked in the sense that it would have allowed briefing to be

24    completed on the reply, which is due next week and then a few

25    more weeks for the parties to discuss in light of the reply

1    and then reset.  The specific March date, the March 9th date

2    is defendant's proposed date from the scheduling order by

3    which the plaintiff should identify any remaining class

4    members.  So while those dates inadvert- -- not

5    inadvertently, but by happenstance started to line up on the

6    calendar, they're for two different reasons.

7              **THE COURT:**  Okay.  This kind of gets to, I guess,

8    my -- one of my sort of more fundamental questions.

9    Certainly who might be participating as a, quote, class

10   member and who wouldn't is important but isn't the essence of

11   this lawsuit really more about what the EEOC claims these

12   entities were doing in directing Hispanic workers over

13   African-American workers in a systematic way?  So isn't the

14   essence of the suit more about what the EEOC alleges the

15   Defendants were doing as opposed to who's in as a class

16   member and who's not?

17             **MS. GRIFFIN:**  That's true, Your Honor.  And

18   that's the substance of our lawsuit, but we are seeking

19   relief on behalf of individual class members, and so it's our

20   understanding just with working with defense counsel in the

21   past in the other class cases, they are going to want to talk

22   to the individual class members that the commission

23   identifies.

24             **THE COURT:**  Absolutely, but it just strikes me

25   that trying, you know, setting a schedule based off of when

UNREDACTED TRANSCRIPT

1  the EEOC is going to identify these people doesn't really

2  make sense to me.  Since again, the essence of the case is

3  were the Defendants doing this or not.  And it's those

4  actions that either will or won't support potential damages

5  for whoever ends up being a part of this class.

6          **MR. BUSEY:**  Your Honor, may Defendants be heard?

7          **THE COURT:**  Yeah.  And let me just finish my

8  thought.  I guess what I'm really getting to is it seems like

9  the first essence of discovery is really all about the

10 Defendants.  Go ahead, sir.

11         **MR. BUSEY:**  Defendants disagree.  And not with

12 what the Court has said but only with that there's a bit more

13 that comes behind it.  That yes, the allegations are that

14 there are some loaded legal words that I'll use for the

15 purposes of conversation.  Pattern or practice, systemic,

16 unidentified class.

17             But defendant's position is that the

18 investigation, the administrative investigation was the

19 existence or nonexistence of any practice or policy.  The

20 enforcement action is to recover relief on behalf of

21 specifically identified individuals.  That is what this

22 lawsuit is to do.  And so inherent in whether an individual

23 can recover is, sure, whether my clients did anything wrong.

24 But the focus of the litigation from defendant's standpoint

25 is did my clients do anything wrong with respect to this

UNREDACTED TRANSCRIPT

1   individual or to that individual?  It isn't an open-ended

2   inquiry into my client's employment practices.

3          That is, again, not committing myself to this

4   position but in terms of logic or structure, that was the

5   focus of the administrative investigation.  So identity to

6   Defendants is very important because it is what sets the

7   scope of what practice or what policy or how it was applied,

8   not in the abstract but to the individuals on whose behalf

9   the commission seeks relief.

10          **THE COURT:**  All right.

11          Any disagreement with that statement,

12   Ms. Griffin?

13          **MS. GRIFFIN:**  Your Honor, well, from the

14   commission's perspective, of course, you know, once we

15   receive a charge of discrimination, we investigate it; we

16   attempt to conciliate it.  And once that doesn't work out,

17   then we have the option to file a lawsuit, the other remedy.

18   We work on behalf of the public's interest.

19          And so in doing that, yes, we think that there is

20   an overarching question, did the Defendants violate Title VII

21   by discriminating against these people.  We understand

22   defendant's perspective but, yes, we do have to get into that

23   for each individual claimant.  And so it's a twofold

24   approach.

25          **THE COURT:**  The plaintiff's dates are sort of

UNREDACTED TRANSCRIPT

1  triggered off this July 27, 2023 date.  I'm unclear why.

2  Your proposed scheduling order to me was very hard to follow.

3  What is the significance of July 27th to the plaintiffs?

4  　　　　MS. GRIFFIN:  Your Honor, if you could direct my

5  attention to the July 27th date.

6  　　　　THE COURT:  It's mentioned on -- your document

7  doesn't have page numbers, which is a problem.  But it's the

8  third page of the proposed scheduling order.  And I guess you

9  don't mention it in the report itself.  I don't see it.

10  　　　　MS. GRIFFIN:  I don't see it.

11  　　　　THE COURT:  But you've got it in your proposed

12  scheduling order.  So first, I guess you both think that I

13  shouldn't set a discovery deadline until after I resolve the

14  motion to dismiss.  That's just not going to happen.  And

15  then you've got "The parties further propose that the parties

16  shall have met and conferred regarding class discovery, the

17  parameters for it and any related Rule 26(f) issue.  They

18  parties shall no later than July 27, 2023."

19  　　　　I'm just not following.

20  　　　　MS. GRIFFIN:  Your Honor, I think that the

21  parties were attempting to reach a compromise.  It's the

22  EEOC -- Defendants originally proposed that the commission

23  identify class members by March 19th.  That's not going to

24  work for the commission, March 9th.  March 9th, I'm sorry.

25  And so the commission couldn't agree to that date.  The

1    commission believes that we're entitled to discovery.  The

2    commission does not think that we should have a stay on

3    discovery until the motion to dismiss is decided.

4             The commission also does not think that -- the

5    commission thinks that we need to proceed with discovery,

6    that there are things that we can do to help the commission

7    go ahead and identify its class members, and the commission

8    would like some time to do that.  As it stands the commission

9    believes that we have, you know, identified almost 50 class

10   members, between 50 and 200 class members.  We think that

11   with discovery, we'll identify additional class members, and

12   so we want some time.  Not necessarily through July 27th,

13   2023.  We want some additional time to conduct that

14   preliminary discovery, identify class members and then go

15   from there.

16            **THE COURT:**  That's not what you said in this

17   proposed order.

18            **MR. BUSEY:**  And if I may, that's defendant's

19   position is to identify the class members again by March 9th.

20   It then builds in the proposed order from there on which the

21   parties largely agree builds in time for us to present the

22   Court with essentially a class discovery plan and schedule

23   remaining deadlines from there.

24            **MS. GRIFFIN:**  And I just want to be clear the

25   commission is amenable to the March 9th.  I think the

1    commission, our position is that we are entitled to conduct

2    discovery to identify class members, and we think that that's

3    going to take more than essentially two months.  A month and

4    a half.

5            And so I apologize, Your Honor, if our plan

6    doesn't read correctly, but it's the commission's position

7    that we are entitled to conduct discovery and that we're

8    going to need more than two months to do that.  I believe

9    that your standard track case management order gives, I

10   think, six to nine months for a standard case.  As Your Honor

11   knows, we're asking that this is a complex case, and so we

12   think that we're going to need, you know, at least six months

13   to conduct that initial discovery.

14           **THE COURT:**  So maybe that's what you meant by the

15   July 27th deadline.  What discovery -- why would you need six

16   months to -- well, let me say.  I get that you would need

17   discovery to help you uncover potential class members.  Why

18   would you need six months to do so?

19           **MS. GRIFFIN:**  Well, you know, as I said, Your

20   Honor, there are thousands.  We did, during the

21   investigation, analysis that says there should have --

22   thousands of people, African-American employees who applied

23   with defendant, were eligible for employment and did not get

24   it.  And so even though we have a conservative estimate of

25   between 50 to 200 class members, that number can go up

UNREDACTED TRANSCRIPT

1    significantly.

2           And so with the discovery that we hope to get

3    from defendants, it may help us quickly identify those

4    people, narrow down their races because it's our

5    understanding that Defendants did not keep records based on

6    race.  And so we need time to go through all that

7    information, identify the class, attempt to contact them and

8    see who wants to be a member.

9           **MR. BUSEY:**  Defendants dispute and disagree with

10   that.  Substantially.

11          **THE COURT:**  What do you disagree with?

12          **MR. BUSEY:**  That this lawsuit is essentially a

13   fishing expedition and an audit of my client's employment

14   practices to identify individuals for the EEOC to bring a

15   claim on behalf of.  Defendant's position again is the EEOC

16   has already done that.  This is the lawsuit to bring those

17   claims.  And we believe that the litigation and again the

18   focus of discovery should be identify the individuals so the

19   parties can conduct discovery on whether they have a claim.

20          These are individual proof claims.  This isn't a

21   rule and I don't say Rule 23 as though that procedural

22   mechanism would apply.  But this isn't a proceeding in which

23   absent class members are entitled to relief, or there's a

24   declaratory relief sought on behalf of an employment

25   practice.  The lawsuit is to seek monetary and specific

1    relief for individuals.

2              And, yes, Defendants acknowledge that the

3    government and the EEOC is in a unique position to do that in

4    an enforcement action that no private litigant could ever do.

5    Could ever join five, ten hundreds or however many claims

6    into one action.  But the scope of the action is still

7    individual relief not, quote/unquote, precert discovery to

8    identify the scope of a class.  It's just the class.  Who the

9    individuals are and discovery on or related to them.

10             **THE COURT:**  So are you saying that it was

11   incumbent upon the EEOC to identify everyone in their

12   administrative investigation?

13             **MR. BUSEY:**  I don't know incumbent on them.  That

14   it is the EEOC identifying those on whose behalf they want to

15   sue for an enforcement action, yes.

16             **THE COURT:**  So is there a regulation that says or

17   some rule of law that says that they're supposed to identify

18   all those people before they bring a matter in federal court?

19             **MR. BUSEY:**  I'm not saying they had to identify

20   them before they sued.  That isn't defendant's position.

21   Defendant's position is now that they have sued, the focus of

22   that lawsuit is/are the individuals on whose behalf they are

23   seeking relief.

24             **THE COURT:**  So why aren't they entitled to do

25   discovery to -- presumably they have some people.  I saw some

UNREDACTED TRANSCRIPT

1   people mentioned.  Why isn't it their -- why don't they have

2   the right to discovery to find out whether there are others

3   upon whom they would be seeking relief?

4          **MR. BUSEY:**  Because defendant's position is that

5   is the scope of the administrative investigation.

6          **THE COURT:**  Okay.

7          **MR. BUSEY:**  And outside the scope of the

8   enforcement action.  That piece.  And I don't mean to

9   nitpick, but I was differentiating between there is no

10  position that they had to tell us before they filed suit.

11  But using the lawsuit to supplement or restart an

12  investigation that was closed at the time of conciliation,

13  that's the disagreement.  Defendants do not believe the EEOC

14  is entitled to do that.

15         **THE COURT:**  And what is that based on?

16         **MR. BUSEY:**  Authorities.  I mean, it's the reason

17  for requesting.  And I don't mean that sarcastically, Your

18  Honor, not at all.

19         **THE COURT:**  No, I understand.

20         **MR. BUSEY:**  Yeah.  But I mean, it's our

21  understanding of the 706 action, the nature of the

22  individualized relief and to borrow from terms maybe like an

23  FLSA collective action, it really is the second half of the

24  FLSA litigation that this type of case is, is here's the

25  group of individuals.  And what the enforcement action allows

1   the EEOC to do is to more or less set aside any procedural

2   requirements about joinder or even maybe standing or venue

3   and say the EEOC gets to bring all of these individuals into

4   court at one time.  And they're seeking relief on their

5   behalf and defendant understands.  But it's our position that

6   that's the scope of a 706 enforcement action is here are the

7   individuals; we're seeking relief on behalf of them, and the

8   litigation is over whether and to what extent those

9   individuals have suffered any harm.

10          **THE COURT:**  Okay.

11          Ms. Griffin, your response?

12          **MS. GRIFFIN:**  Our response, basically, Your

13  Honor, is that the EEOC, whenever the EEOC files a lawsuit,

14  those proceedings are de novo, like new.  The EEOC in filing

15  its lawsuit met its obligation in identifying its class.  The

16  EEOC's compliance merely states that it's seeking relief on

17  behalf of a class of African-Americans who applied for

18  positions with the defendant.  And so to that turn, we have

19  identified our class.  What we're using discovery for and we

20  are entitled to that, is to identify the specific persons who

21  were affected by the defendant's actions.  And to do that we

22  need discovery from the Defendants.

23          **THE COURT:**  His position is in this particular

24  kind of action, a -- what did you say, 706 enforcement

25  action?

1          **MR. BUSEY:**  Yes, Your Honor, Section 706.

2          **THE COURT:**  In a 706 enforcement action, you

3    can't identify other people.  That's his position.  I mean,

4    that you already have whoever it is that -- you're supposed

5    to already have whoever it is who's part of the class.

6          **MS. GRIFFIN:**  Your Honor, that's not -- no.

7    That's not what case law says.  The commission isn't

8    obligated to identify every single class member who wants to

9    involve in a lawsuit beforehand.  I can provide briefing

10   after this call on the numerous cases that say the commission

11   comes into a lawsuit, it's entitled to identify specific

12   class members after.

13          I think the distinction is had the commission

14   identified who is seeking relief on behalf.  That's the class

15   of African-American employees.  Has the commission identified

16   every single person's name at this point, no.  You know, we

17   need discovery from the defendant to identify that.  We may

18   need different information from their payroll systems.

19   Different things that might help us identify those people.

20          And, yes, even though it's a 706 claim, we allege

21   in the complaint that hey, they have a pattern and practice

22   of doing these things.  And so 706 doesn't limit us.

23   706 doesn't say, you know, we're stuck with who we had at the

24   beginning, if that makes sense.

25          **THE COURT:**  I mean, it sounds to me like you two

1    are describing two very different things.  And I can't set a

2    schedule when you're taking two very different positions on

3    what the scope of discovery should be, which I wished y'all

4    had highlighted that a little bit more clearly.  And maybe

5    it's me, but that -- I clearly understood your -- the

6    difference in the schedule that you saw, but the fact that

7    it's based on an interpretation of what you're entitled to

8    under this particular provision, I did not get.

9            So let's deal with that issue.  I'm trying to

10   think of the best way to do it.  I could argue it both ways

11   or see it both ways in terms of scheduling who needs to take

12   a position first.  I mean, I could say the EEOC should

13   because they're seeking to take discovery, but of course,

14   that's also the norm in a case.  I could see that perhaps the

15   defendant should go first to say no, we're taking the

16   position that this is a much more limited discovery

17   situation.  You all have any particular feeling about -- I

18   could just make you both submit your positions.  Maybe that's

19   the best way to do it is have you both simultaneously submit

20   your positions and then you could each respond to the other.

21   We can do it that way.

22            **MS. GRIFFIN:**  It works for the commission.

23            **MR. BUSEY:**  Yeah.  The two rounds, provided

24   there's a response built in, which I understand the Court

25   saying.  Then the cross filing principal briefs and response

1  briefs.  That works for Defendants.

2          **MS. GRIFFIN:**  It works for the commission as

3  well, Your Honor.

4          **THE COURT:**  All right.  And let me be clear that

5  what the defendant is saying is in a 706 action, EEOC is not

6  entitled to go through the records of the defendant and see

7  who applied and all that.  They're supposed to already have

8  their set of class members going into the 706 so that the

9  discovery would just be as to those people, are those

10  particular people entitled to relief.  That's the defendant's

11  position, correct?

12          **MR. BUSEY:**  That's correct, Your Honor.  And the

13  only caveat I'll add is defendant isn't taking an absolute

14  position that it's a specific list.  It's more the first

15  part, which is that the start of the case isn't let's find

16  out who the class should be.  The commission should already

17  know that and be able to identify who they are.

18          **THE COURT:**  Right.  And I heard what you said of

19  you're not taking the position.

20          **MR. BUSEY:**  Okay.

21          **THE COURT:**  They were supposed to give you a

22  list.  You're not taking a position.

23          **MR. BUSEY:**  Correct.  That's why we're asking for

24  that.  We're not saying that was a requirement in

25  administrative or pleading.  It's just a discovery issue now.

1          **THE COURT:**  Okay.  The commission is saying no,

2     now that we've established a pattern or practice, we're

3     entitled to find out how that pattern or practice may have

4     impacted other people that we don't know about right now.

5     And we get to do discovery on that.  Is that -- that's the

6     commission's position?

7          **MS. GRIFFIN:**  Essentially, Your Honor.  And the

8     commission's position also is that we've already identified

9     our class as African-American employees.

10          **THE COURT:**  Okay.  But going into a 706 action,

11    you're saying you don't have to have a specific list of

12    people that this involves.  You get to now go and see who

13    falls into that -- into your class that you've identified in

14    general terms.

15          **MS. GRIFFIN:**  Yes, Your Honor.

16          **THE COURT:**  Okay.  All right.  How quickly could

17    you all brief this issue?  Today is the 19th.

18          **MS. GRIFFIN:**  Can we have ten days, Your Honor?

19    I know the Defendants reply is due next week, and so I want

20    to be conscientious of that.

21          **MR. BUSEY:**  Yeah.  I don't mean -- I understand

22    the urgency, but if we may start any counting from, say, the

23    17th -- or no, I'm sorry, the 24th.  Our reply is due the

24    23rd, and it's obviously the priority on all fronts in my

25    office right now.  So if we ran ten days, that would be

1   around maybe February 3rd.  Would that work?

2           **THE COURT:**  That works.

3           **MS. GRIFFIN:**  That works for the commission.

4           **THE COURT:**  Okay.  So February 3rd, briefs from

5   you each as to this in my mind it's is the scope of what a

6   706 action is, the scope in terms of discovery.  And then

7   let's have replies.  Can you get replies done one week later

8   on the 10th?

9           **MS. GRIFFIN:**  Yes, Your Honor.

10          **MR. BUSEY:**  Yes, Your Honor.  I know it's going

11  to be a lot, and I don't mean that sarcastically.  I just

12  mean I know it's a lot of authorities and a lot of

13  authorities to go through.  Might we at least have the

14  weekend and say the 13th?

15          **THE COURT:**  Sure.  If you want to ruin someone's

16  weekend, we'll make it the 13th.  It's fine with me.

17          **MR. BUSEY:**  That's right.  It's my folks whose

18  weekend will be ruined, so...

19          **THE COURT:**  Sounds like the commission will

20  probably be able to get theirs done by the 10th, so their

21  weekends won't be ruined, but yeah, that's fine to make it

22  the 13th.

23          **MR. BUSEY:**  Thank you, Your Honor.

24          **THE COURT:**  All right.  I do want to though come

25  back to the schedule for one minute or so.  Initial

```
 1  disclosures are typically due in no later than two weeks from

 2  the date of this conference.  You all had February 9th as

 3  initial disclosures.  I don't know -- well, I mean, you each

 4  are taking the position you're taking in the case.  So I

 5  don't know why you couldn't go ahead and do initial

 6  disclosures.  What am I missing there?

 7        MS. GRIFFIN:  Your Honor, we just thought we'd

 8  ask for some additional time, keeping in mind that we did

 9  have the pending motion to dismiss outstanding.  And so under

10  the complex case management track, I saw that it afforded us

11  some additional time to play with dates, move dates around

12  and give us additional time.  And so that's why we proposed

13  the February 9th date.

14        THE COURT:  Let me say that as -- whether it's

15  complex or the standard, I never just adopt the dates in

16  those.  And, you know, you mentioned that in the standard,

17  it's actually I think it's a six to eight months for

18  discovery.  I don't do it that way.  I mean, yes, that's a

19  general guide, but to me it's always dependent on the case

20  we're dealing with at the time and what is the time frame

21  that's necessary for that particular case.  And so, I mean,

22  can you all get disclosures to each other by February 2nd?

23  Initial disclosures.

24        MS. GRIFFIN:  Yes, Your Honor.

25        MR. BUSEY:  That's fine with defendants, Your
```

UNREDACTED TRANSCRIPT

1    Honor.

2              THE COURT:  All right.  And you all had some

3    other dates already in the scheduling order.  You had motions

4    to join parties and amend pleadings March 20th.  And then you

5    had a motion to dismiss the deadline April 19th.  Of course,

6    one motion to dismiss has already been filed.  But I'm

7    inclined to go ahead and enter a scheduling order that

8    reflects those dates, and then we'll put off the

9    consideration of the other dates until we figure out this

10   scope of discovery issue.  Any issues with that?

11             MS. GRIFFIN:  No, Your Honor, nothing from the

12   commission.

13             MR. BUSEY:  Nothing from defendants, Your Honor.

14             THE COURT:  And I think I said one more minute,

15   but let me finish the ones -- the things that I had looked at

16   already.  And in terms of eDiscovery, you have that there's

17   no agreement, but you'll comply with the local rule.  You had

18   an agreement -- you have an agreement on the return of

19   inadvertently disclosed privileged information.  Correct on

20   both of those?

21             MS. GRIFFIN:  Correct, Your Honor.  With the

22   caveat that the parties have agreed to discuss ESI in more

23   detailed terms, and so we may come up with an agreement and

24   submit it to the Court for approval.

25             THE COURT:  Okay.  That's fine.

UNREDACTED TRANSCRIPT

24

1          **MR. BUSEY:**  That's correct, Your Honor.

2          **THE COURT:**  Okay.  Then on ADR you all have

3     agreed on Michael Russell as a mediator.  You had May 17th

4     and some reference to a trial schedule setting in April.  The

5     May 17th doesn't comply with our rules, and I don't know what

6     the reference to a trial setting was all about.  Can y'all

7     help me there?

8          **MS. GRIFFIN:**  I think the schedule had an early

9     April date, but the EEOC has two trials in April.  One

10    beginning in April 4th and then the second one, I think, mid

11    April that involve counsel of record.  And so we didn't want

12    to commit to a mediation that we weren't able to participate.

13         **THE COURT:**  Well, let me say what I typically do

14    in these scheduling conferences is go ahead and plug in the

15    date that's dictated by the rule, which again is 12 weeks

16    from the date of this conference.  As it gets closer and you

17    see whether, you know, you're not able to comply with that

18    date for some reason, I'll entertain a motion to extend that

19    deadline with the reason why you're unable to comply with it,

20    whether it, you know, sometimes it's, look, there's a key

21    piece of discovery we've been trying to get.  We just haven't

22    been able to get it yet, which is a very legitimate reason to

23    put off ADR.  Not waste, you know, anyone's time or money.

24    Or in your case, you know, if those cases actually do go to

25    trial, as we know sometimes they get put off, if they

UNREDACTED TRANSCRIPT

1   actually do go to trial and you just logistically can't get

2   it scheduled, that's certainly a reason I would put it off.

3          **MS. GRIFFIN:**  Okay.

4          **THE COURT:**  So I'm going to go ahead and plug in

5   April 13th and just keep those issues in mind.  Okay?

6          **MS. GRIFFIN:**  Okay.  Thank you, Your Honor.

7          **THE COURT:**  All right.  That's all I'm going to

8   reflect in the scheduling order.  I'm definitely not going to

9   say this is a trial that's going to take 10 to 14 days

10   because I want to talk more about that at what I would

11   anticipate is a follow-up scheduling conference after we've

12   dealt with this discovery issue because that sounds like a

13   long time.  Anything else you all think we can accomplish

14   today?

15          **MS. GRIFFIN:**  There's nothing else from the

16   commission, Your Honor.

17          **MR. BUSEY:**  Defendants do not have anything

18   further, Your Honor.  Oh, my apologies.  I said that, but I

19   do.  The briefing because this is page limits, do we want to

20   use the dispositive, treat this like a dispositive motion or?

21          **THE COURT:**  Yes.  But I would say -- I would hope

22   that you could even come in under those page limits.  I'm a

23   big believer in the more concise you are in presenting your

24   position, the more effective you are.  But yeah, let's go

25   ahead and use the dispositive motion page limits.

26

1          **MR. BUSEY:**  That's all Defendants have.  Thank

2     you, Your Honor.

3          **THE COURT:**  Okay.  All right.  Thank you all.

4     We'll get this sort of basic scheduling order of what we've

5     done thus far entered today or tomorrow, and I'll look

6     forward to you all educating me on what a 706 action is.

7                    (Adjournment.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNREDACTED TRANSCRIPT

27

1                    **C E R T I F I C A T E**

2

3

4          I, CANDACE S. COVEY, do hereby certify that the

5    foregoing 68 pages are, to the best of my knowledge, skill

6    and abilities, a true and accurate transcript from my

7    stenotype notes of the Teams scheduling conference on the

8    19th of January, 2023, in the matter of:

9

10

11   EQUAL OPPORTUNITY COMMISSION

12   vs.

13   SUPREME STAFFING, LLC

14

15

16   Dated this 2nd day of February, 2023.

17

18

19

20                          S/Candace S. Covey

21                    CANDACE S. COVEY, LCR, RMR, CRR
                      Official Court Reporter
22                    United States District Court
                      Western District of Tennessee
23

24

25

                    UNREDACTED TRANSCRIPT