IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT ) | |
| OPPORTUNITY COMMISSION, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. |
| ) | 2:22-cv-02668-SHL-tmp |
| v. ) | |
| ) | |
| SUPREME STAFFING, LLC; BETTER ) | JURY DEMAND |
| PLACEMENTS PERSONNEL, LLC; AND ) | |
| INSPIRE HOTEL STAFFING, LLC, ) | |
| ) | |
| Defendants. ) | |

## FIRST AMENDED COMPLAINT

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race and to provide appropriate relief to an aggrieved individuals who were adversely affected by such practices ("Aggrieved Individuals"). As alleged with greater particularity in the paragraphs below, Supreme Staffing, LLC; Better Placements, LLC; and Inspire Hotel Staffing, LLC (collectively "Defendant Employers"), an integrated enterprise, failed to refer, select, place or assign a group of Aggrieved Individuals who are Black applicants and employees with the clients serviced by Defendant Employers, and discriminated against another group of Aggrieved Individuals who are Black employees by assigning them less desirable and lower paying positions because of their race and based on Defendant Employers' clients' race-based preferences. Defendant Employers also violated record-keeping requirements by failing to preserve certain records required by Title VII, 42 U.S.C.§ 2000e-8(c), and 29 C.F.R. § 1602.14.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) (Title VII) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The unlawful employment practices alleged in this Complaint were committed within the jurisdiction of the United States District Court for the Western District of Tennessee, Western Division. Venue is appropriate for this Court.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (Commission), is the agency of the United States charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant Supreme Staffing LLC, a staffing agency, has continuously been doing business in the State of Tennessee and the City of Memphis and has continuously had at least 15 employees. While Supreme Staffing is headquartered in Memphis, Tennessee, the company has offices in Tennessee, Georgia, Nevada, Louisiana, Indiana, Florida, Ohio, Delaware, New Jersey, Connecticut, South Carolina, and Kentucky.

5. At all relevant times, Defendant Supreme Staffing LLC has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

6. At all relevant times, Defendant Better Placements LLC, a staffing agency, has continuously been doing business in the State of Tennessee and the City of Memphis and

      has continuously had at least 15 employees. While Better Placements is headquartered in Memphis, Tennessee, the company has offices in Tennessee, Georgia, Nevada, Louisiana, Indiana, Florida, Ohio, Delaware, New Jersey, Connecticut, South Carolina, and Kentucky.

7. At all relevant times, Defendant Better Placements LLC has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

8. At all relevant times, Defendant Inspire Hotel Staffing LLC, a staffing agency, has continuously been doing business in the State of Tennessee and the City of Memphis and has continuously had at least 15 employees. While Inspire Hotel Staffing LLC is headquartered in Memphis, Tennessee, the company has offices in Tennessee, Georgia, Nevada, Louisiana, Indiana, Florida, Ohio, Delaware, New Jersey, Connecticut, South Carolina, and Kentucky.

9. At all relevant times, Defendant Inspire Hotel Staffing LLC has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

10. At all relevant times, Defendant Employers, Supreme Staffing LLC, Better Placement LLC and Inspire Hotel Staffing LLC have operated as a single employer or integrated enterprise, or both.

    a. Defendant Employers share common ownership and common management, as Eduardo Sanchez Borja serves as the owner of the three companies.

    b. Defendant Employers share common offices and employees.

    c. Defendant Employers have one main headquarters, 6041 Mount Moriah Road, Suite 12, Memphis, Tennessee.

    d.      Defendant Employers use the same third-party vendor platform, Tempworks, for payroll processing.

    e.      Defendant Employers' managers and supervisors move from, and among the three companies, Supreme Staffing LLC, Better Placements LLC, and Inspire Hotel Staffing LLC.

    f.      Defendant Employers use the same personnel policies and procedures, including job applications listing all three companies, Supreme Staffing LLC, Better Placements LLC, and Inspire Hotel Staffing LLC, as the employer.

    g.      Defendant Employers have the same principal address and mailing address listed with the Tennessee Secretary of State, 6041 Mount Moriah Road, Suite 12, Memphis, Tennessee.

## ADMINISTRATIVE PROCESS

11.    More than 30 days prior to the institution of this lawsuit, on April 11, 2019, Francisco Alvarez filed a charge with the Commission, Charge No. 490-2019-00801, alleging violations of Title VII by Defendant Employers.

12.    The Charge alleged, among other things, that "Black job applicants were turned away from seeking employment and the open jobs were given to Hispanics."

13.    On July 7, 2022, the Commission issued to Defendant Employers a Letter of Determination finding reasonable cause to believe that Defendant Employers violated Title VII and inviting Defendant Employers to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

14. The Letter of Determination notified Defendant Employers that the Commission had found, among other things, that: "Since at least January 2018 to the present, [Defendants] engaged in a pattern or practice of discrimination against persons because of race (Black/African American) in recruiting, selections, referrals, placements, assignments, and hiring in violation of Title VII at its Memphis facilities."

15. The Commission engaged in communications with Defendant Employers to provide Defendant Employers the opportunity to remedy the discriminatory practices described in the Letters of Determination.

16. The Commission was unable to secure from Defendant Employers a conciliation agreement acceptable to the Commission.

17. On August 22, 2022, the Commission issued Defendant Employers Notice of Failure of Conciliation advising Defendant Employers that the Commission was unable to secure from Defendant Employers a conciliation agreement acceptable to the Commission.

18. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

### Count I

**Defendant Employers Discriminated Against Black Applicants and Employees in Selection, Referral, and Placement**

19. Since at least January 2018, Defendant Employers have engaged in unlawful employment practices at their locations in Memphis, Tennessee in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and Title I of the Civil Rights Act of 1991.

20. The unlawful employment practices include an ongoing pattern or practice by Defendant Employers of failing to select, refer, and/or place Black applicants into positions at Defendant Employers' client companies because of their race.

21. Defendant Employers are owned by Eduardo Sanchez Borja, a Hispanic male.

22. Borja hires front desk staff, account supervisors, recruiters, and office managers.

23. The front desk staff, account supervisors, recruiters, and office managers refer, hire, and or place employees at various client companies.

24. The front desk staff, account supervisors, office managers, and recruiters, fill positions at client companies in distribution, shipping, logistics, and hospitality, and provide office support for temporary assignments, temp to hire and long-term assignments.

25. The positions filled by Defendant Employers include laborers, forklift operators, material handlers, pickers, packers, shipping, and janitorial.

26. The front desk staff record, among other things, the names of applicants, their contact information, position sought, experience, and preferred work shift on Defendant Employers' "Available Lists."

27. After obtaining the Available Lists, the front desk staff provides the Available Lists to one of Defendant Employers' recruiters.

28. The recruiters maintained the Available Lists in a binder stored in the back closet of the business.

29. On or around March 2018, Defendant Employers hired Francisco Alvarez, a Hispanic male, as an account supervisor.

30. Alvarez worked until March 22, 2019, when Defendant Employers discharged him.

31. As an account supervisor, Alvarez met applicants entering Defendant Employers' establishment seeking selection, referral, hire, assignment, and placement for jobs at Defendant Employers' clients.

32. Alvarez also worked as a recruiter for Defendant Employers.

33. Alvarez also worked as an onsite manager for one of Defendant Employers' clients, Barrett Distribution Center, located in Memphis, Tennessee.

34. During his employment with Defendant Employers, Alvarez learned of clients' request/preference for only Hispanic employees.

35. During his employment with Defendant Employers, Alvarez learned of Defendant Employers' practice of accommodating its clients' requests for Hispanic workers over Black workers.

36. During the relevant time period, Alvarez complained about clients requesting only Hispanic employees.

37. Norma Serrato, a Hispanic woman, and Defendant Employers' office manager, did not select, refer, or place Black applicants and employees with Defendant Employers' clients because Defendant Employers' clients did not want Black employees working for them.

38. Defendant Employers use Tempworks, a third-party, cloud-based software platform to process payroll, upload personnel documents and enter demographics and contact information.

39. Hiring data (individual's hire date, race/ethnicity, name, and home address, assignment detail, client's name, start date, job title, and the individual's assigned worksite) produced by Tempworks, reveals that Defendant Employers selected, referred, placed, and assigned

   Hispanic applicants and employees to clients at a disproportionately higher rate than Black applicants and employees.

40. While the labor market availability for Black workers in the Memphis Metropolitan Area was approximately 93% and 6% for Hispanic workers during the relevant period, Defendant Employers placed approximately 5,600 Black workers when, absent discrimination, the labor market availability of Black workers indicates they should have referred or placed over 9,000 Black workers; by contrast, Defendant Employers placed over 4,000 Hispanic workers when the labor market availability for Hispanic workers indicates they should have referred or placed under 600 Hispanic workers.

41. Defendant Employers' hiring data reveals a statistically significant shortfall of Black workers because Defendant Employers selected, referred, and placed Black workers at a disproportionately lower rate than Hispanic workers.

42. Treron Gipson, Miesha Williams, Tyrus Braddox, and Ashley Boyd are a few members of the group of Aggrieved Individuals affected by Defendant Employers' unlawful employment practices, and their experiences provide examples of discriminatory treatment that illustrate the pattern of unlawful conduct alleged in this Count.

43. Gipson, who is Black and a resident of Memphis, visited Defendant Employers' establishment in 2019 and June 2020 seeking employment based on his experience as a picker, loader, forklift operator working in warehouses in Memphis.

44 Gipson signed in and completed an application.

45. Although a Hispanic recruiter said she would call him, Gipson never received a telephone call from Defendant Employers despite his warehouse experience.

46. From 2018 through 2021, Defendant Employers referred approximately 1417 individuals for jobs as pickers, approximately 127 individuals for jobs as loader-unloader, approximately 878 individuals as forklift operators and over 400 individuals as general warehouse workers.

47. Williams, a Black woman, visited Defendant Employers' establishment in December 2020, seeking employment.

48. Williams had warehouse experience as a picker and scanner.

49. Williams completed paperwork and asked why Defendant Employers quickly placed Hispanic employees.

50. Defendant Employers did not select, refer, or place Williams for employment although Defendant Employers placed approximate 1420 individuals into picker jobs between 2018 and November 2021.

51. In 2019, Braddox, a Black man, and certified forklift operator, applied for employment with Defendant Employers and sought a forklift operator position.

52. Defendant Employers told Braddox they lacked any openings.

53. Braddox watched a Hispanic applicant who was not certified as a forklift operator walk in and ask for a forklift operator job. Defendant Employers selected, referred and placed the Hispanic applicant into the job.

54. Between 2018 and November 2021, Defendant Employers placed approximately 878 individuals into forklift operator positions.

55. Boyd, a Black woman, with ten years of warehouse experience, applied for a material handler position with Defendant Employers on several occasions. Boyd updated her application. Defendant Employers never selected, referred, placed or called Boyd for work.

56. From 2018 until November 2021, Defendant Employers placed approximately 610 individuals into material handler jobs and over 400 individuals into general warehouse experience.

57. Defendant Employers' discriminatory actions reflect a standard operating procedure for the three staffing companies, and their employees, front desk, account managers, recruiters, and onsite supervisors knew about it.

58. Defendant Employers' discriminatory actions emanate from the very top and trickle down throughout lower management.

59. The unlawful employment practices described above disproportionately exclude Black employees from employment and constitute a pattern or practice of discrimination against Black employees based on race.

60. The effect of the practices complained of in the above paragraphs has been to deprive a group of Aggrieved Individuals, consisting of Black applicants and employees, of equal employment opportunities and otherwise adversely affect their status as applicants and employees because of their race.

61. The unlawful employment practices complained of in the above paragraphs above were and are intentional.

62. The unlawful employment practices complained of in paragraphs above were and are done with malice or with reckless indifference to the federally protected rights of the Aggrieved Individuals.

## Count II

**Defendant Employers Discriminated Against Black Employees By Assigning Them into Less Desirable and Lower-Paying Positions**

63. Since at least January 2018, Defendant Employers have engaged in unlawful employment practices at its location in Memphis, Tennessee in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) and Title I of the Civil Rights Act of 1991.

64. The unlawful employment practices include an ongoing pattern or practice by Defendant Employers of assigning Black employees into less desirable and lower-paying positions at Defendant Employers' client companies because of their race.

65. The Commission repeats the allegations and incorporates by reference the allegations in the foregoing paragraphs of this Complaint into this Count.

66. Jerry Cummings and Keadrian Braxton are members of the group of Aggrieved Individuals affected by Defendant Employers' unlawful employment practices, and their experiences provide examples of discriminatory treatment that illustrate the pattern of unlawful conduct alleged in this Count.

67. Cummings, a Black man, applied for employment with Defendant Employers and a recruiter told him they had no jobs available. Cummings watched Hispanics applicants arrive at the office after him, complete applications and Defendant Employers select, refer, or place them for positions immediately. Later, Defendant Employers assigned Cummings in a lower-paying job in poor conditions.

68. Braxton, a Black man, applied for employment with Defendant Employers seeking a certified forklift operator position that paid $15.00 per hour.

69. Defendant Employers denied Braxton a forklift operator position, claiming they had already filled all forklift operator positions. Instead, Defendant Employers assigned Braxton to a job working in a warehouse that paid $10.00 per hour.

70. While Defendant Employers denied Braxton a forklift operator position, Braxton observed Defendant Employers select, refer, or place Hispanic applicants into forklift operator positions. Defendant Employers never assigned Braxton to a position that allowed him to earn $15.00 per hour.

71. The effect of the practices complained of in the above paragraphs has been to deprive a group of Aggrieved Individuals, consisting of Black employees, of equal employment opportunities and otherwise adversely affect their status as employees because of their race.

72. The unlawful employment practices complained of in the above paragraphs were and are intentional.

73. The unlawful employment practices complained of in the paragraphs above were and are done with malice or with reckless indifference to the federally protected rights of the Aggrieved Individuals.

## Count III

### RECORD KEEPING VIOLATION

74. Since at least 2018, Defendant Employers have failed to preserve records relevant to the determination of whether unlawful employment practices have been or are being committed in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-8(c), and 29 C.F.R. § 1602.14.

75. Applicants seeking selection, referral, and placement for employment at Defendant Employers' clients appeared at the front desk where the front desk staff would record,

        among other things, the names of the applicants, their telephone number, the shift position sought, and the applicant's experience on Defendant Employers' "Available Lists."

76. Defendant Employers' employees make and keep lists reflecting some information about workers who seek or are considered for positions and about what work may be available.

77. Defendant Employers continue to fail to preserve the "Available Lists."

78. Applicants completed paper applications.

79. Defendant Employers have not maintained those applications.

80. Defendant Employers failed to preserve applications as required by Title VII, 42 U.S.C. § 2000e-8(c), and 29 C.F.R. § 1602.14.

81. Defendant Employers have failed to preserve records relevant to the determination of whether unlawful employment practices have been or are being committed.

82. The unlawful employment practices complained of in the paragraphs above were and are intentional.

83. The unlawful employment practices complained of in the paragraphs above were and are done with malice or with reckless indifference to the federally protected rights of a class of Black applicants and employees.

## **PRAYER FOR RELIEF**

Wherefore, the Commission requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employers, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from discriminating against applicants and employees in the selection, referral, and placements for jobs.

B. Order Defendant Employers to institute and carry out policies, practices, and programs which provide equal employment opportunities for all Aggrieved Individuals and which eradicate the effects of their past and present unlawful employment practices.

C. Order Defendant Employers to make whole all Aggrieved Individuals by providing appropriate backpay with prejudgment interest in amounts to be determined at trial and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including, but not limited to, instatement or awarding them front pay.

D. Order Defendant Employers to make whole all Aggrieved Individuals by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the paragraphs above, in amounts to be determined at trial.

E. Order Defendant Employers to make whole all Aggrieved Individuals by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in the paragraphs above, including emotional pain and suffering, humiliation, inconvenience, and loss of enjoyment of life, in amounts to be determined at trial.

F. Order Defendant Employers to pay all Aggrieved Individuals punitive damages for their malicious and reckless conduct, as described in the paragraphs above, in amounts to be determined at trial.

G. Require Defendant Employers, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them to maintain all employment records required by law.

H. Grant such further relief as the Court deems necessary and proper in the public interest.

I. Award the Commission its costs of this action.

## **JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its complaint.

Date: March 20, 2023

        Respectfully submitted,

        FAYE A. WILLIAMS
        Regional Attorney
        TN Bar No. 11730
        faye.williams@eeoc.gov

        AMY BLACK
        Assistant Regional Attorney
        TN Bar No. 016102
        amy.black@eeoc.gov

        ROSLYN GRIFFIN PACK
        Trial Attorney
        MS Bar No. 103317
        roslyn.griffin-pack@eeoc.gov

        ASHLEY FINCH
        Trial Attorney
        TN Bar. 036797
        ashley.finch@eeoc.gov

        *s/ Neil Hillis*
        NEIL HILLIS
        Trial Attorney
        TN Bar. 036048
        neil.hillis@eeoc.gov

        EQUAL EMPLOYMENT
        OPPORTUNITY COMMISSION
        Memphis District Office
        200 Jefferson Avenue, Suite 1400
        Memphis, Tennessee 38103
        901-701-6445

        ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

      I certify that, on April 6, 2023, a true and correct copy of this *First Amended Complaint* has been served on the following attorney(s) by electronic means.

ZACHARY B. BUSEY
Tennessee Bar No. 29763
zbusey@bakerdonelson.com

WHITNEY M. DOWDY
Tennessee Bar No. 24985
wdowdy@bakerdonelson.com

MARY KATHERINE SMITH
Tennessee Bar No. 35328
mkcampion@bakerdonelson.com

DEAN J. SHAUGER
Tennessee Bar No. 39746
dshauger@bakerdonelson.com

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
(901) 526-2000 – telephone
Attorneys for Defendants

| April 6, 2023 | s/ *Neil Hillis* |
|---|---|
| Date | Neil Hillis |