IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION ) ) ) Plaintiff, ) ) ) ) v. ) ) SUPREME STAFFING LLC; BETTER ) PLACEMENTS PERSONNEL LLC; AND ) INSPIRE HOTEL STAFFING LLC ) ) Defendant. ) | Civil Action NO.: 2:22-cv-02668-SHL-TMP<br><br>Chief Judge Lipman |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

---

Plaintiff Equal Employment Opportunity Commission (the Commission) asks this Court to deny Defendant Employers Supreme Staffing LLC, Better Placements Personnel, LLC, and Inspire Hotel Staffing, LLC's (Defendant Employers) Motion to Dismiss the Commission's Amended Complaint because:

1. The July 7, 2022 Letter of Determination Gave Defendant Employers Sufficient Notice of the Race Claims Alleged Against Them;

2. The Charge of Discrimination Contains an Unambiguous Allegation of Race Discrimination; and

3. The Commission Alleged a Plausible Claim that Defendant Employers Engaged in a Pattern or Practice of Discrimination Against Blacks When it Failed to Hire,

> Refer, Select, or Place Them and Assigned them Less Desirable and Lower Paying Positions;

4. The Claims in this Lawsuit are Timely; and

5. The Commission Alleged a Plausible Claim that Defendant Employers Violated Portions of Title VII's Recordkeeping Provisions when Defendant Employers Failed to Properly Maintain Records.

## RELEVANT FACTS

The Commission filed this lawsuit on September 29, 2022, under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 on behalf of a group of Aggrieved Individuals who are Black applicants and employees. See Compl., ECF No. 1. The Commission alleged Defendant Employers, an integrated enterprise, violated Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 when it failed to refer, select, place, or assign a group of Aggrieved Individuals who are Black with Defendant Employers' client companies, because of their race, Black. The Commission also alleged Defendant Employers violated Title VII when they regularly assigned Black employees into less-desirable and lower-paying positions at Defendant Employers' client companies because of their race. Finally, the Commission alleged Defendant Employers violated certain recordkeeping requirements made applicable to them by Title VII.

On December 5, 2022, Defendant Employers moved to dismiss the Commission's Complaint. Defendant Employers based the motion on its mistaken belief that the Commission's Enforcement authority is somehow limited to pursuing relief on behalf of a Charging Party who filed a charge, and only against the specific company that the Charging Party named in the charge of discrimination. Defendant Employers also alleged lack of sufficient notice of the

claims against them or, in the alternative, that even if they had notice, the allegations are untimely. Defendant Employers' final contention, made without any legal support, that the Commission could not maintain a viable cause of action for Defendant Employers' recordkeeping violations.

On April 6, 2023, the Commission Amended its Complaint, (1) to clarify its allegations that Defendant Employers' received appropriate pre-suit notice of the EEOC's administrative findings of race discrimination, (2) to explicitly state that Defendant Employers engaged in a "pattern or practice" of assigning Black applicants and employees into less desirable and lower-paying positions at Defendant Employers' client companies because of their race, (3) to make revisions and changes to nomenclature to eliminate any doubt that the victims of discrimination referenced in the complaint are just a few members of larger groups of aggrieved individuals affected by the patterns-or-practices of discrimination alleged in Counts I and II, and (4) to explicitly caption as "Count III" the third claim of the Complaint, which alleges recordkeeping. *See* Doc. No. 41.

Despite the filing of the Amended Complaint, Defendant Employers renewed their request to dismiss the Commission's Amended Complaint, ignoring the applicable law in the Supreme Court and the Sixth Circuit.

**STANDARD OF REVIEW**

The Commission agrees with the standard of review on a motion to dismiss as stated in Defendants' brief on pages 5-6. Document No. 46.

## ARGUMENTS & AUTHORITIES

**A.  The Letter of Determination Gave Defendant Employers Sufficient Notice of the Race Claims Alleged Against Them**

"EEOC enforcement actions are not limited to the claims presented by the charging parties" in their administrative charges. *See Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 331 (1980). After the filing of a charge and before filing a lawsuit, the EEOC is required to undertake an investigation, and, in its Letter of Determination, give the employer notice of the violations uncovered and an opportunity to settle the matter through conciliation. *See Mach Mining, LLC v. EEOC*, 575 U.S. 480, 482-83 (2015). As the Supreme Court recognized in *Mach Mining*, after it completes its investigation, the Commission provides notice of its administrative findings "in a letter announcing its determination of 'reasonable cause." *Id.* at 494. Even before *Mach Mining*, the Sixth Circuit recognized that the EEOC properly provides pre-suit notice in its letter of determination. *See Serrano v. Cintas Corp.*, 699 F.3d 884, 904 (6th Cir. 2012) ("[I]t is clear that the EEOC provided notice to Cintas that it was investigating class-wide instances of discrimination. In fact, the EEOC's reasonable-cause determination letter explicitly stated as much."). *See also EEOC v. Keco* Indus., *Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984) ("EEOC's reasonable cause determination…it merely places the defendant on notice of the charges against him.")

In an EEOC enforcement action, it is the violations set forth in the agency's letter of determination (not the original administrative charge) that establish the scope of the litigation. Once additional discrimination has been uncovered during a reasonable investigation, the EEOC need only follow the usual procedural and statutory requirements before filing a lawsuit, as explained by the Fourth Circuit in a case cited approvingly by the Supreme Court in *General Telephone*:

> So long as the new discrimination arises out of the reasonable investigation of the charge filed, it can be the subject of a reasonable cause determination, to be followed by an offer by the Commission of conciliation, and, if conciliation fails, by a civil suit, without the filing of a new charge on such claim of discrimination. In other words, the original charge is sufficient to support action by the EEOC as well as a civil suit under the Act for any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge, provided such discrimination was included in the reasonable cause determination of the EEOC and was followed by compliance with the conciliation procedures fixed in the Act.

*EEOC v. General Elec. Co.*, 532 F.2d 359, 366 (4th Cir. 1976) (internal quotation marks and citations omitted) (cited with approval by *General Telephone*, 446 U.S. at 331).

The Amended Complaint appropriately alleges the Commission notified the Defendants in its July 7, 2022, Letter of Determination, that the Commission had determined that: "Since at least January 2018 to the present, [Defendants] engaged in a pattern or practice of discrimination against persons because of race (Black/African American) in recruiting, selections, referrals, placements, assignments, and hiring in violation of Title VII at its Memphis facilities." [Am. Compl. ¶¶ 13-14].The Supreme Court explicitly stated that "[p]rompt notice of a reasonable-cause determination also serves to cure any deficiencies in the . . . notice [of the Charge] that may result from EEOC amendment of the claimed violation after investigation." *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 372 n.32. (1977).

**B.    The Charge of Discrimination Contains an Unambiguous Allegation of Race Discrimination**

Despite Defendant Employers' argument to the contrary, the Charge of Discrimination explicitly states, that Black job applicants were "turned away from seeking employment and the open jobs were given to Hispanics." That allegation on the face of the charge, placed the EEOC on notice that Supreme Staffing may have been discriminating against Black applicants for employment. Thus, the EEOC investigated the allegation. This was permissible. *See Gen. Tel.*

*Co. of the Nw. v. EEOC*, 446 U.S. 318, 331 (1980) ("EEOC enforcement actions are not limited to the claims presented by the charging parties" in their administrative charges.)

Moreover, the "facts alleged in the body of the EEOC charge, rather than merely the boxes that are marked on the charge, are the major determinants of the scope of the charge." *Bray v. Palm Beach Co.,* 907 F.2d 150 (6th Cir. June 29, 1990) (table) (per curiam). *See also Spengler v. Worthington Cylinders*, 615 F.3d 481, 490 (6th Cir. 2010) (even where box is not checked, the question is whether the allegations on the face of the charge places EEOC on notice of a claim is sufficient).

The Commission's position is strengthened in situations like the present, where allegations made in the lawsuit are identical to those set forth in the reasonable cause determination. *EEOC v. Gen. Elec. Co.*, 532 F.2d 359, 366 (4th Cir. 1976). Here, as stated above, the original charge of discrimination alleged that Blacks were routinely discriminated against because of their race. That a Hispanic person, and not a Black person, made the allegation is of no consequence. The Commission need not ignore that discrimination nor file a Commissioner's Charge[1] to prosecute it further. *Id*. at 365. *See also, Keco,* 748 F.2d at 1101 (The EEOC's allegations were properly before the Court where the only difference between the EEOC's later charge and [the charging party's] initial charge is the number of persons victimized by KECO's allegedly discriminatory practices. As the later class-based claim brought by the EEOC could

---

[1] A Commissioner's Charge is a Charge of Discrimination filed by one of the five Commissioners who heads the agency as authorized by 42 U.S.C. § 2000e-5(b). In *General Electric*, the court explained that once the EEOC's investigation has already uncovered facts relevant to additional discriminatory acts beyond those described in a charge filed by a Charging Party, to require the agency to file a Commissioner's Charge in order to pursue those additional claims would result in "an inexcusable waste of valuable administrative resources," "an intolerable delay in the enforcement of rights", and "would be simply be a useless exercise in technical nicety*." Gen. Elec. Co*., 532 F.2d at 365-66.

have reasonably been expected to grow out of [the charging party's] individual complaint of discrimination, no new additional proceedings were necessary.)

The cases cited above hold the EEOC may investigate allegations of discrimination it uncovers during its investigation into claims of discrimination. The EEOC may also file suit on those same claims so long as it complies with its obligations under § 2000e–5(b), namely that it "tell the employer about the claim—essentially, what practice has harmed which person or class—and must provide the employer with an opportunity to discuss the matter in an effort to achieve voluntary compliance." *Mach Mining v. EEOC,* 575 U.S. 488 (2015). The Commission complied with its obligations to each Defendant Employer. Defendant Employers' attempts to impose additional requirements beyond the Commission's statutory requirement are improper and do not support a motion to dismiss. *See EEOC v. Bloomberg L.P.*, 751 F. Supp. 2d 628, 646 (S.D.N.Y. 2010) (Notice of the particulars of the investigation is not required, and the scope of the EEOC's initial investigation does not limit the scope of the lawsuit alleging Title VII violations it may later bring. So long as the Letter of Determination informed the defendant that "it was facing sex discrimination charges from a class of similarly situated women," it had been sufficiently placed on notice of the class claims to be conciliated.)

The Commission asks the Court to deny Defendant Employers' motion to dismiss for this reason alone.

**C.      There is an Identity of Interest Between the Named Defendants**

A party not named in an EEOC charge may be sued under Title VII if there is a clear identity of interest between it and a party named in the EEOC charge. *EEOC v. U-Haul Intern.*, No. 11-2844-STA-dkv, 2012 WL 2682748 at *7 (W.D. Tenn. July 6, 2012); *E.E.O.C. v. Care Centers Mgmt. Consulting, Inc.*, 942 F. Supp. 2d 771, 775 (E.D. Tenn. 2013) (citing *Jones v.*

*Truck Drivers Loc. Union No. 299*, 748 F.2d 1083, 1086 (6th Cir.1984). This exception "acknowledges the reality that laymen, unassisted by trained lawyers, initiate the process of filing a charge with the EEOC, and accordingly prevents frustration of the remedial goals of Title VII by not requiring procedural exactness in stating the charge." *Id.*

There are two tests that are generally applied in determining whether the "identity of interest" exception applies. The first test requires courts to consider whether "the unnamed party has been provided with adequate notice of the charge under circumstances which afford him an opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Id.* (citing *Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130*, 657 F.2d 890, 905 (7th Cir.1981)). The second test sets forth four factors that the court can consider in determining the relationship between the unnamed and named parties when the charge was filed, and conciliation was underway:

> "(1) Whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint.
> (2) Whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings.
> (3) Whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party.
> (4) Whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party."

*Id.* (*citing Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.1977)).

The Commission prevails under either test. Defendant Employers had sufficient notice of the allegations made against them as all Defendants share common ownership and management. As outlined above, Eduardo Sanchez Borja owns all three companies. The companies share a

single office and the same employees. *See* Doc. No. 41, ¶ 10 a-g. That the companies are so intertwined shows that all three had notice of the allegations made against it, and actively participated in the investigation. That all three companies were listed on the Commission's Letter of Determination serve as more evidence that all three companies were a part of the Commission's investigation into the Charge of Discrimination. *Id.* at ¶ 14. Defendant Employers' claims to the contrary are disingenuous and false.

The EEOC also prevails under the second "identify of interest test." It is unlikely that the Charging Party, as a lay person, would have known he needed to include the names of all three companies on his charge of discrimination. This is not dispositive however, as the interests of Supreme Staffing, are like the interests of Better Placement and Inspire Hotel Staffing. Along with the facts that all three companies share common ownership and are housed at the same location, the three companies also share the same personnel policies and procedures, including job applications. These factors all support a finding that Defendant Employers are similar enough to support an identity of interest.

Next, Defendant Employers cannot show prejudice because the Charging Party did not name them in the Charge of Discrimination. In fact, Defendant Employers do not argue unfair prejudice in their motion to dismiss. Rather, they appear to make a "gotcha" argument that Inspire, and Better Placements should not be included in this lawsuit simply because the Charging Party, who is not familiar with legal principles of integrated enterprise, did not know to list all three companies on his Charge of Discrimination. This argument fails because, as outlined above, all three companies had notice of the allegations made against them. It also fails on a public policy basis as it directly contradicts the purpose of Title VII as the Defendant Employers

try to place higher pleading requirements on lay persons at the investigative stage of litigation. That is improper.

The Commission satisfies the final element of the test as Defendant Employers' arbitration agreement, that it requires all employees to sign, lists all three companies' names in the body of the agreement. This gives the impression that all three companies participate in employment decisions. These facts all support a finding that the Commission established an identity of interest exists between all the named Defendants, and each are proper parties here. Defendant Employers arguments to the contrary lack merit. *Care Centers Mgmt. Consulting, Inc.*, 942 F. Supp. 2d at 778.

### D. The EEOC Alleged a Plausible Claim that Defendant Employers Engaged in a Pattern and Practice of Discrimination Against Blacks when it Failed to Hire, Refer, Select or Place Them

Dismissal of a complaint pursuant to Rule 12(b)(6) is inappropriate if the complaint 1) contains a short and plain statement of the claim showing that the pleader is entitled to relief, and 2) contains enough information to state a facially plausible legal claim. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). A party meets this standard by alleging facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

A complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination *Twombly*, 550 U.S. 544, 547. Moreover, in analyzing complaints, a court cannot disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556. It therefore bears repeating that where, as here, a defendant seeks pre answer dismissal of a complaint, "the duty of a court 'is merely to assess the legal feasibility of the complaint, not to

assay the weight of the evidence which might be offered in support thereof." *Twombly*, 550 U.S. at 556 (holding that this standard "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]"). Thus, at this stage of the litigation, the Court must take the allegations alleged as true. If the combined allegations, taken as true in context, are plausible, the complaint survives." *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 630 (6th Cir. 2009).

The Commission's Amended Complaint alleges a plausible claim for relief. The Commission contends through statistical information and anecdotal facts that Defendant Employers engaged in a pattern and practice of discrimination when it failed to select, refer, or place Black applicants into positions at Defendant Employers' clients because of their race.

The Amended Complaint also provides specific events where the Commission alleges Defendant Employers treated Black applicants and employees differently than Hispanic applicants and employees. The Amended Complaint alleges Francisco Alvarez worked as a recruiter for Defendant Employers and as an onsite manager for one of their clients. He learned during his employment of the clients' request and preference for only Hispanic employees. He learned of Defendant Employers accommodating their clients' request for Hispanic workers over Black workers. The Amended Complaint identifies a Hispanic office manager that did not select, refer, or place Black applicants with Defendant Employers' clients because the clients did not want Blacks working for them. The Amended Complaint also provides examples of a few of the Aggrieved Individuals who are Black and qualified that were affected by Defendant Employers' unlawful employment practices. The Amended Complaint also provides examples where Defendant Employers assigned Blacks into less desirable and lower-paying positions. Their experiences provide examples of the discriminatory treatment that illustrate the pattern of

unlawful conduct alleged in the Amended Complaint. And Defendant Employers' hiring data reveals that they selected, referred, placed, and assigned Hispanic applicants and employees to clients at a disproportionately higher rate than Black applicants and employees despite the labor market availability for Black workers in the Memphis Metropolitan Area at or around 93% and 6% for Hispanic workers during the relevant period. These facts are neither speculative nor conclusory and allege a plausible claim.

In *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012), the Sixth Circuit reversed the trial court's decision to grant Humana's motion to dismiss, finding the employee's allegations sufficiently stated class-action claims under Title VII and Section 1981. There, the Amended Complaint alleged Humana had engaged in a pattern or practice of discrimination against African American managers and professional staff in hiring, compensation, promotion, discipline, and termination. The Amended Complaint in Humana provided specific events where the Black Plaintiff Keys alleged Humana treated her differently than her White colleagues. The Amended Complaint identified the key supervisors and other relevant persons by race and either name or company title; and it alleged that Keys and other African Americans received specific adverse employment actions notwithstanding satisfactory employment performances.

Here, like *Humana,* the Amended Complaint filed by the Commission "allege[s] sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference." *Humana,* 684 F.3d 610, quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). The Amended Complaint alleges Defendant Employers Supreme Staffing, Better Placements Personnel, and Inspire Hotel Staffing, "an integrated enterprise, failed to refer, select, place or assign a group of Aggrieved Individuals who are Black applicants and employees with clients serviced by Defendant Employers and discriminated

against a group of Aggrieved Individuals who are Black employees by assigning them less desirable and lower paying positions because of their race and based on Defendant Employers' clients' race-based preferences." Document No. 41, First Amended Complaint.

Because the Commission "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged," *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), the Commission requests that the Court deny the motion to dismiss on these claims.

### E. The Commission's Lawsuit is Not Limited to the Individuals Identified in Its Complaint

Contrary to Defendant Employers' assertion, the Commission's lawsuit is not limited to the 6 persons listed in the Commission's Amended Complaint. Rather, both Counts I and II of the Commission's Amended Complaint, allege a broad pattern of discriminatory conduct by Defendant Employers that affected many Black applicants and employees — not merely violations affecting the six individuals referenced by name in the complaint. *See* Doc. No. 37. The persons listed are merely a few members of the broader groups of aggrieved individuals affected by Defendants Employers' unlawful employment practices.

The EEOC however, included the "pattern or practice" terminology in its Amended Complaint to indicate the broad nature of its claims and that the Commission is litigating those claims using the evidentiary framework recognized in *Franks* and *Teamsters*. The Commission did this despite the Sixth Circuit holding that the pattern-or-practice framework is an evidentiary standard or method of proof and thus need not be pled. *See Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (2012) ("*Swierkiewicz* compels the conclusion that a plaintiff is not required to plead whether she intends to employ the *McDonnell Douglas* or the *Teamsters* burden-shifting evidentiary framework").

The methods of proof for claims brought under Section 706 of Title VII, 42 U.S.C. § 2000e-5, including the "pattern-or-practice" method, were created in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *Franks v. Bowman Transp. Co.*, 424 U.S. 747 (1976), *Int'l. Bhd. of Teamsters v. United States*, 431 U.S. 324, 358-359 (1977), and *Bazemore v. Friday*, 478 U.S. 385 (1986).[2] The Commission sought to make clear it pursues claims for relief on behalf of a large class of individuals, a fact that Defendant Employers, seemingly acknowledge is available in this Section 706 case." [ECF No. 33, at 7].

Moreover, decades of caselaw support the fact that the EEOC may assert claims seeking relief under Section 706 for a broad group of aggrieved individuals — what the Commission and courts have often called a "class," for short. "The EEOC need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals." *See General Telephone Co*. 446 U.S. at 323-24. It does not sue as a proxy for – or representative of – either the original charging party or any other persons for whom the Commission seeks relief. *See E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 297-98 (2002); *see also General Telephone Co.*, 446 U.S. at 325-26 (1980) ("The 1972 amendments to §706 accordingly expanded the Commission's enforcement powers by authorizing the Commission to bring a civil action in federal district court against private employers reasonably suspected of violating Title VII. In so doing, Congress sought to implement the public interest as well as to bring about more effective enforcement of private rights.").

Defendant Employers repeated attempts to limit the Commission's lawsuit to a mere six persons is not only incorrect but improper. The Commission properly alleged Defendant

---

[2] To be sure, "[a]lthough the Teamsters framework is not a freestanding cause of action, courts—including the Supreme Court—sometimes loosely refer to the Teamsters method of proof as a 'pattern-or-practice claim.'" *Chin v. Port Auth. of NY & NJ*, 685 F.3d 135, 149 n.8 (2d Cir. 2012).

Employers engaged in a pattern of discriminatory conduct under § 706 and are allowed to seek relief for the entire class of victims who were affected. This Court should deny Defendant Employers motion to dismiss for this reason.

### F.     The Claims in this Lawsuit are Timely

Despite Defendant Employers' argument to the contrary, the Commission claims are timely and encompass the class. A timely filed EEOC charge is a precondition for filing a lawsuit. 42 U.S.C. § 2000e-5(e). Ordinarily a charge of discrimination must be filed within 180 days of the unlawful discrimination unless the charge has been first filed with a State or local agency authorized to grant or seek relief from the alleged discriminatory practices. *Id.* In the latter case, the limitations period is 300 days. *Id.* This added or "dual" limitations period applies in deferral states, like Tennessee. *See Jones v. Federal Express Corp.*, 952 F.3d 815, 820 (6th Cir. 2020); *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2011). When the unlawful discrimination occurs in a deferral state, the 300-day limitation period automatically applies. *Id.*

Under the Commission's work sharing agreement with the Tennessee Human Rights Commission, the Commission dual-filed Alvarez's charge with the Tennessee Human Rights Commission. By dual filing, the Commission expanded the scope of the investigation to any allegations of discriminatory acts 300 days before Alvarez filed his charge. Thus, the Commission could investigate instances of discrimination occurring 300 days before April 11, 2019. *E.E.O.C. v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 798-99 (E.D. Tenn. 2016) (holding that the ADA provides for a 300-day statute of limitations when a charging party first files with the Tennessee Human Rights Commission or dual-files with the Commission and the Tennessee Human Rights Commission contemporaneously).

As outlined above, the Commission's enforcement authority is not limited to only seeking relief for the Charging Party, as the filer of the charge and is similarly not limited to only allegations of discrimination that affect him. That the Charging Party is not a claimant in this lawsuit is of no consequence as the claims of this lawsuit reasonably grew from his timely filed charge of discrimination and, the Commission gave Defendant Employers reasonable notice of the allegations against them via a Letter of Determination which outlined the Commission's findings.

The Letter of Determination gave Defendants notice of the class claims and an opportunity to conciliate. Because the Commission's Complaint does not conflict with any mandatory limitations period or exhaustion requirement, this Court should deny Defendants' motion to dismiss.

### G. The Commission's allegation that Defendant Employer Violated Title VII's Record Keeping Requirement is a Viable Cause of Action

Section 709(c) of Title VII requires employers, including Defendant Employers to (1) maintain records relevant to the determination of whether unlawful employment practices have been or are being committed; (2) preserve those records for a period; and (3) make reports from the records as the EEOC prescribes. 42 U.S.C. § 2000-8(c). *See also EEOC v. Autozone, Inc.*, Case No. 00-293, 2006 WL 2524093 *9 (W.D. Tenn. Aug. 29, 2006); *EEOC v. Cleveland Construction*, Case No. 04-2730, 2006 WL 1806042 * 4-5 (W.D. Tenn. 2006). Additionally, the Commission's regulations establish an employer's obligation to retain relevant documents pursuant to certain recordkeeping and reporting requirements. See, e.g., 29 C.F.R. § 1602.1, et seq. The regulations expressly authorize the Commission to establish requirements for the creation and preservation of records to aid the Commission in the enforcement of employment discrimination acts. 29 C.F.R. § 1602.1. As pertinent here, § 1607.4 requires employers, like

Defendant Employers to maintain and make available for inspection records and other information about its selection procedures and their impact on persons identifiable by race, sex, or ethnic group. 29 C.F.R.§ 1607.4.

Where EEOC guideline requires certain records, preservation is mandatory. 29 C.F.R. § 1602.14. Any personnel or employment record made or kept by an employer (including but not limited to ... application forms submitted by applicants and other records having to do with hiring, promotion … or termination... must be preserved for a period of one year from the date of making the record or the personnel action involved, whichever occurs later. ... Where a charge of discrimination has been filed or an action brought by the Commission ... the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action. 29 C.F.R. § 1602.14. Personnel records made or kept by the employer regarding hiring, rates of pay, and compensation, for example, must be preserved. *Favors v. Fisher*, 13 F.3d 1235, 1239 (8th Cir. 1994) (failure to preserve records violates the federal regulation). *Lombard v. MCI Telcoms. Corp.*, 13 F. Supp. 2d 621, 629 (N.D. Ohio 1998).

The Commission's Complaint and Amended Complaint sufficiently pleads that Defendant Employers failed to retain and preserve applications and employment related materials.

- "Since 2018, Defendants have failed to keep required documents. (Amended Complaint, Doc. No. 41, ¶ 74)
- Defendants' front desk staff recorded applicant information, such as name, telephone number, shift position sought, and experience on personnel records identified as "Available Lists." (Amended Complaint, Doc. No. 41, ¶ 75)
- Additionally, Defendants' staff made and kept records reflecting information about workers who were considered for certain positions and available work assignments. (Amended Complaint, Doc. No. 41, ¶ 76)
- Applicants also submitted applications. (Complaint, Doc. No. 41, ¶ 78)

Defendant Employers intentionally failed to maintain and preserve these employment records, including applicant data, selection data, compensation, and assignment data, and applications for employment. This failure constitutes an unlawful employment practice and violates Title VII and the Commission's recordkeeping regulations. *See EEOC v. Cleveland Constr., Inc.*, No. 4-2730, 2006 WL 1806042, at * 4-5 (W.D. Tenn. June 29, 2006) and *EEOC v. Autozone, Inc.*, No. 00-2923, 2006 WL 2524093, at *9-10 (W.D. Tenn. Aug. 29, 2006).

Defendant Employers cannot shirk its recordkeeping responsibilities as the adequate records are imperative when allegations of discrimination occur. For instance, during the investigation of Alvarez's Charge, Defendant Employers could not produce applications of individuals who applied and admitted it did not retain Available Lists. The Commission required these records to determine who applied for work with Defendant Employers, which applicants Defendant Employers considered for work, and why Defendant Employers failed to hire skilled Black employees, while Defendant Employers hired lesser qualified Hispanic applicants. These issues were relevant to the Commission's investigation., Because Defendant Employers failed to properly maintain the records, the Commission had to expend additional time, effort, and resources to determine the impact Defendant Employers' hiring practices had on Black applicants and employees and whether employment discrimination statutes have been or were violated. The Commission's claim about Defendant Employers failure to properly maintain records as required by Section 709(c) of Title VII is a plausible cause of action and the Commission is entitled to relief.

## CONCLUSION

This Court should deny Defendant Employers Motion to Dismiss. The Commission's Amended Complaint, when viewed in the light most favorable to the Commission, demonstrates

the Commission alleged sufficient facts to support each claim in this lawsuit. Defendant Employers claims to the contrary lack merit.

Date: May 18, 2023

Respectfully submitted,

ATTORNEYS FOR PLAINTIFF

FAYE A. WILLIAMS
Regional Attorney
TN Bar No. 11730
faye.williams@eeoc.gov

AMY BLACK
Assistant Regional Attorney
TN Bar No. 016102
amy.black@eeoc.gov

*/s/ Roslyn Griffin Pack*
ROSLYN GRIFFIN PACK
Trial Attorney
MS Bar No. 103317
roslyn.griffin-pack@eeoc.gov

ASHLEY FINCH
Trial Attorney
TN Bar. 036797
ashley.finch@eeoc.gov

NEIL HILLIS
Trial Attorney
TN Bar. 036048
neil.hillis@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Memphis District Office
200 Jefferson Avenue, Suite 1400
Memphis, TN 38104
(901) 701-6445

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2023, a true and correct copy of the pleading has been served on these attorneys by electronic means.

**ZACHARY B. BUSEY**
Tennessee Bar No. 29763
zbusey@bakerdonelson.com

**WHITNEY M. DOWDY**
Tennessee Bar No. 24985
wdowdy@bakerdonelson.com

**MARY KATHERINE SMITH**
Tennessee Bar No. 35328
mkcampion@bakerdonelson.com

**DEAN J. SHAUGER**
Tennessee Bar No. 39746
dshaunger@bakerdonelson.com

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
(901) 526-2000
***Attorneys for Defendants***

                    */s/ Roslyn Griffin Pack*
                    Roslyn Griffin Pack