# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Action No.2:22-cv-02668-SHL-tmp** |
| **v.** | ) ) | |
| **SUPREME STAFFING LLC; BETTER PLACEMENTS PERSONNEL LLC; AND INSPIRE HOTEL STAFFING, LLC,** | ) ) ) ) | **JURY DEMAND** |
| **Defendants.** | ) | |

## BRIEF IN OPPOSITION TO MOTION TO BIFURCATE

**ZACHARY B. BUSEY**
Tennessee Bar No. 29763
zbusey@bakerdonelson.com

**MARY KATHERINE SMITH**
Tennessee Bar No. 35328
mkcampion@bakerdonelson.com

**WHITNEY M. DOWDY**
Tennessee Bar No. 24985
wdowdy@bakerdonelson.com

**DEAN J. SHAUGER**
Tennessee Bar No. 39746
dshauger@bakerdonelson.com

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
(901) 526-2000 – telephone

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

I.    FACTUAL BACKGROUND ..................................................................................... 1

II.    EARLIER DISCOVERY BRIEFING ........................................................................2

    A.    The EEOC's use of the word "class" has no legal or procedural significance .............2

    B.    The EEOC sues under Section 707 to eradicate a pattern or practice of systemic, company-wide discrimination ..................................................................................3

    C.    The EEOC sues under Section 706 to stand in the shoes of an aggrieved individual and seek relief for that individual ...........................................................................4

    D.    Although it often is, the *Teamsters* evidentiary framework should not be conflated with a Section 707 action ............................................................................................5

III.    LEGAL STANDARDS APPLICABLE TO BIFURCATION ............................................7

    A.    The Court's role in shaping the discovery process is an important one, especially following the 2015 amendments to the Rules of Civil Procedure ................................7

    B.    Neither *Teamsters* nor *Serrano* necessitates bifurcation in a Section 706 action, and neither identifies the factors to consider or standards to apply ......................................8

    C.    Federal Rule of Civil Procedure 42 controls and provides the framework for any bifurcation request ..................................................................................................10

    D.    The Rules Enabling Act operates as a check and balance on any district court's use of Rule 42 ...............................................................................................................11

IV.    ARGUMENTS & AUTHORITIES .........................................................................12

    A.    The EEOC's Motion is premature and should be denied accordingly.........................13

    B.    Even on the minimal facts before the Court, Rule 42's factors weigh against bifurcation .............................................................................................................15

    C.    Bifurcation like the EEOC seeks would violate the Rules Enabling Act ...................17

    D.    The EEOC knows the identity of the individuals on behalf of whom it filed this lawsuit and, in the face of bifurcation, keeping secret the identity of those individuals is plainly prejudicial ................................................................................19

V.    CONCLUSION...................................................................................................20

CERTIFICATE OF SERVICE ........................................................................................21

# TABLE OF AUTHORITIES

CASES

*Adkisson v. Jacobs Eng'g Grp., Inc.,*
   2020 WL 8254452 (E.D. Tenn. Dec. 10, 2020)..........................................................................11

*Andrade v. Rambosk,*
   2023 WL 2077427 (M.D. Fla. Feb. 17, 2023) .............................................................................20

*Bush v. Dictaphone Corp.,*
   161 F.3d 363 (6th Cir. 1998) ......................................................................................................10

*Charvat v. Plymouth Rock Energy, LLC,*
   2016 WL 207677 (E.D.N.Y. Jan. 12, 2016) ...............................................................................20

*Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.,*
   2008 WL 4823069 (S.D. Ohio Nov. 3, 2008)..............................................................................20

*Cooper v. Fed. Reserve Bank of Richmond,*
   467 U.S. 867 (1984).......................................................................................................................6

*E.E.O.C. v. ABM Indus. Inc.,*
   2008 WL 5385618 (E.D. Cal. Dec. 23, 2008) ............................................................................12

*E.E.O.C. v. Cintas Corp.,*
   2015 WL 13021471 (E.D. Mich. Aug. 20, 2015) .......................................................................23

*E.E.O.C. v. CRST Van Expedited, Inc.,*
   611 F. Supp. 2d 918 (N.D. Iowa 2009).........................................................................................5

*E.E.O.C. v. JBS USA, LLC,*
   2011 WL 3471080 (D. Colo. Aug. 8, 2011) .................................................................................4

*E.E.O.C. v. Los Alamos Constructors, Inc.,*
   382 F. Supp. 1373 (D.N.M. 1974) ..............................................................................................12

*E.E.O.C. v. New Indianapolis Hotels, LLC,*
   2012 WL 364052 (S.D. Ind. Feb. 1, 2012) ................................................................................21

*E.E.O.C. v. Pitre, Inc.,*
   908 F. Supp. 2d 1165 (D.N.M. 2012) .......................................................................................3, 4

*E.E.O.C. v. Presrite Corp.,*
   2012 WL 4434055 (N.D. Ohio Sept. 24, 2012)..........................................................................24

*E.E.O.C. v. Ruby Tuesday, Inc.,*
   2011 WL 13364669 (W.D. Pa. Dec. 27, 2011)...........................................................................21

*E.E.O.C. v. Summer Classics, Inc.*,
   41 F. Supp. 3d 1287 (N.D. Ala. 2011) ......................................................... 12

*E.E.O.C. v. Target Corp.*,
   2007 WL 1461298 (E.D. Wis. May 16, 2007) ............................................... 12

*E.E.O.C. v. Waffle House, Inc.*,
   534 U.S. 279 (2002) ......................................................................................... 5

*Est. of McIntosh v. City of Chicago*,
   2015 WL 5164080 (N.D. Ill. Sept. 2, 2015) .................................................. 19

*Farmers Bank of Lynchburg, Tennessee v. BancInsure, Inc.*,
   2011 WL 2023301 (W.D. Tenn. May 20, 2011) ...................................... 15, 20

*Fed. Express Corp. v. Accu-Sort Sys., Inc.*,
   2005 WL 8156705 (W.D. Tenn. Mar. 31, 2005) ........................................... 15

*Gaffney v. Fed. Ins. Co.*,
   2008 WL 3980069 (N.D. Ohio Aug. 21, 2008) ....................................... 17, 18

*Geiger v. Tower, Auto.*,
   579 F.3d 614 (6th Cir. 2009) ................................................................. 6, 7, 9

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ......................................................................................... 3

*Honican v. Stonebridge Life Ins. Co.*,
   2005 WL 2614904 (E.D. Ky. Oct. 13, 2005) ................................................ 14

*In re Beverly Hills Fire Litig.*,
   695 F.2d 207 (6th Cir. 1982) ........................................................................ 15

*In re Ohio Execution Protocol Litigation*,
   845 F.3d 231 (6th Cir. 2016) ........................................................................ 12

*Krueger v. New York Telephone Co.*,
   163 F.R.D. 446 (S.D.N.Y. 1995) .............................................................. 18, 19

*Lewis v. ACB Bus. Serv., Inc.*,
   135 F.3d 389 (6th Cir. 1998) ........................................................................ 11

*Marie v. Am. Red Cross*,
   771 F.3d 344 (6th Cir. 2014) ........................................................................ 12

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ......................................................................................... 7

4876-5539-7505

*Miss. Pub. Corp. v. Murphree*,
    326 U.S. 438 (1946) ........................................................................................ 16

*Payne v. A.O. Smith Corp.*,
    99 F.R.D. 534 (S.D.Ohio 1983) ..................................................................... 15

*Periodontal Assocs. of Memphis, P.C. v. Peerless Indem. Ins. Co.*,
    2017 WL 4122623 (W.D. Tenn. Sept. 18, 2017) ........................................... 20

*Rosen v. Reckitt & Colman, Inc.*,
    1994 WL 652534 (S.D.N.Y. Nov. 17, 1994) .................................................. 18

*Saxion v. Titan-C-Mfg., Inc.*,
    86 F.3d 553 (6th Cir. 1996) ........................................................................... 15

*Scales v. J. C. Bradford*,
    925 F. 2d 901 (6th Cir. 1996) ........................................................................ 12

*SCF, LLC v. Hartford Fire Ins. Co.*,
    2021 WL 3549130 (W.D. Tenn. May 5, 2021) ............................................... 14

*Serrano v. Cintas Corp.*,
    699 F.3d 884 (6th Cir. 2012) .............................................................. 2, 13, 14

*Serrano v. Cintas Corp.*,
    2010 WL 1417802 (E.D. Mich. Apr. 5, 2010) ............................................... 21

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ...................................................................................... 16

*Surles v. Greyhound Lines, Inc.*,
    474 F. 3d 288 (6th Cir. 2007) ....................................................................... 12

*Teamsters v. United States*,
    431 U.S. 324 (1977) ................................................................................ 8, 9, 13

*Tipton v. OhioHealth Grady Mem'l Hosp.*,
    2022 WL 1469813 (S.D. Ohio May 10, 2022) .......................................... 10, 11

*Vill. at Hamilton Pointe LLC*,
    2020 WL 13568924 (S.D. Ind. Sept. 29, 2020) ............................................... 5

*Wakefield v. Olen Properties Corp.*,
    2022 WL 16966532 (C.D. Cal. May 12, 2022) ............................................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................................... 9

4876-5539-7505

*Wexler v. White's Fine Furniture, Inc.*,
    317 F.3d 564 (6th Cir. 2003) ................................................................. 6

*White v. Baxter Healthcare Corp.*,
    533 F.3d 381 (6th Cir.2008) .......................................................... 7, 8

*Whitlock v. FSL Management, LLC*,
    843 F.3d 1084 (6th Cir. 2016) ........................................................ 15

*Wilson v. Morgan*,
    477 F.3d 326 (6th Cir. 2007) ........................................................... 15

Woods v. State Farm Fire & Casu. Co.,
    2010 WL 1032018 (S.D. Ohio Mar. 16, 2010) ................................. 18

STATUTES

28 U.S.C. § 2072(b) ............................................................................... 15

42 U.S.C. § 2000e-5 ............................................................................ 4, 5

42 U.S.C. § 2000e-6 ............................................................................... 3

U.S. Const. amend. VII .......................................................................... 23

RULES

Fed. R. Civ. P. 26 ............................................................................. 11, 12

Fed. R. Civ. P. 42 .............................................................. 14, 15, 16, 18, 19

OTHER AUTHORITIES

1991 U.S.C.C.A.N. 694 .......................................................................... 13

4876-5539-7505

I.    **FACTUAL BACKGROUND**

Defendants know very little about the facts of this case.  The EEOC alleges Title VII

Race discrimination (Black/African American) against all Defendants.[1]  It does so on behalf of

the individuals identified in the Amended Complaint.  The EEOC has not identified any other

individuals.  None of the individuals in the Amended Complaint ever filed a charge of

discrimination against any Defendant.  The EEOC also never notified any Defendant about any

investigation into their Race-based claims.  Similarly, in its Motion, the EEOC does not provide

any additional facts or poof of any kind.  The only facts Defendants have are the unsworn facts

from the Amended Complaint.  But even those facts struggle to hold up under minimal scrutiny.

When implying that Supreme Staffing never hired Gipson, for example, the EEOC

alleges that Gipson "never received a telephone call from [Defendants] despite his warehouse

experience."  (Amended Complaint, Doc. 41, ¶ 45.)  But Gipson's own paystubs show that he

did work assignments for Supreme Staffing.  (Gipson Paystubs, Exhibit 1.)   Gipson of course

has a copy of the paystubs he received.  Braxton is another example.  The EEOC asserts that

"Defendant Employers never assigned Braxton to a position that allowed him to earn $15.00 per

hour."  (Amended Complaint, Doc. 41, ¶ 70.)  Braxton not only signed an assignment sheet in

connection with a $15-per-hour position, but his paystubs show he had an assignment where he

actually earned $15 per hour.  (Braxton Assignment Sheet & Paystubs, Exhibit 2.)  The point is

not that Defendants disagree with or dispute the Amended Complaint's allegations (although

they do).  The point is that even on a cursory pass, the Amended Complaint's unsworn

allegations are contradicted by information plainly known by the individuals to which those

---

[1] Defendant Supreme Staffing LLC, as well as Defendant Better Placements Personnel LLC, and
Defendant Inspire Hotel Staffing LLC.

allegations relate.  It may be that the EEOC did not confer with the individuals before making its allegations, or it may be that those communications inadvertently fell short.  Whatever the reason, the Amended Complaint's unsworn allegations struggle to hold up under minimal scrutiny.

## II.    EARLIER DISCOVERY BRIEFING

The Parties previously briefed the starting point for discovery in a Section 706 action, like this one.  (*See* Cross-Filed Briefs & Replies, Docs. 32-35.)  That briefing is relevant to the EEOC's Motion.  Although already before the Court, Defendants reiterate the more significant aspects of it.

### A.    The EEOC's use of the word "class" has no legal or procedural significance.

When a private litigant pleads or uses the word "class" it has significance and invokes Rule 23, much like the word "collective" invokes the Fair Labor Standards Act.  But when the EEOC uses the word "class" it has no procedural or legal relevance.  It just means "more than one person."  "'Class' cases," according to the EEOC, are simply "suits on behalf of multiple aggrieved individuals who were victims of discriminatory employment practices as well as suits on behalf of one or more individuals who were victims of discriminatory employment policies."[2] It does not mean there is "a class" of aggrieved individuals.  It just means the EEOC believes there are "multiple aggrieved" individuals.[3]  "[D]id the Defendants violate Title VII by

---

[2] *See* U.S. Equal Employment Opportunity Comm'n, A Study of the Litigation Program Fiscal Years 1997–2001, at § B.2 ("Tables III – VII"), https://web.archive.org/web/20021023165009/ http://www.eeoc.gov/litigation/study/study.html, lass accessed September 21, 2023; *accord Serrano v. Cintas Corp.*, 699 F.3d 884, 907 (6th Cir. 2012) (Gibbons, J., concurring) (citing same).

[3] Moreover, "[i]f one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack, every Title VII case would be a potential companywide class action." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 (1982).

discriminating against these people," the EEOC has posed as the ultimate question in this case, and "[w]e do have to get into that for each claimant," the EEOC continued.  (Scheduling Conference Transcript, Doc. 31, PageID 168, Lines 19-23.)  The EEOC filed this lawsuit to seek relief on their behalf—on behalf of these specific people, "each claimant," not an unknown or absent class of individuals.

**B.     The EEOC sues under Section 707 to eradicate a pattern or practice of systemic, company-wide discrimination.**

Under Section 707, formally 42 U.S.C. § 2000e-6, whenever the EEOC "has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described," the EEOC may file suit and request injunctive relief to ensure "the full enjoyment of rights herein described."  42 U.S.C. § 2000e-6(a).  "This type of action is designed to eradicate systemic, company-wide discrimination . . . ."  *E.E.O.C. v. Pitre, Inc.*, 908 F. Supp. 2d 1165, 1171 (D.N.M. 2012) (quotation and citation omitted).  "Thus," in Section 707 actions, "the focus is whether the unlawful employment action constituted the standard operating procedure or regular practice of the company, and the EEOC brings the case on behalf of the public interest rather than an individual aggrieved person."  *Id.*  Also, Section 707 actions "do not require the filing of any individual charge."  *E.E.O.C. v. JBS USA, LLC*, 2011 WL 3471080, at *4 (D. Colo. Aug. 8, 2011).  This is not a Section 707 action.  It was a Section 706 action when the EEOC filed the Complaint (Doc. 1, ¶ 1).  It remained a Section 706 action when the EEOC filed the Amended Complaint (Doc. 41, ¶ 1).  This is a Section 706 action.

**C.    The EEOC sues under Section 706 to stand in the shoes of an aggrieved individual and seek relief for that individual.**

Under Section 706, formally 42 U.S.C. § 2000e-5, an individual charge of discrimination is required.  The EEOC may then bring a civil action against "any respondent . . . named in the charge," *see* § 2000e-5(f)(1), and it does so on behalf of the person "aggrieved."  When the EEOC brings suit "under Section 706 of Title VII for the purpose of recovering individual relief, including compensatory and punitive damages, on behalf of aggrieved individuals," like the EEOC has in this case, "there must be individualized proof for every element of each claim." *E.E.O.C. v. Vill. at Hamilton Pointe LLC*, 2020 WL 13568924, at *2 (S.D. Ind. Sept. 29, 2020).  That is what the EEOC does in a Section 706 action, it "stands in the shoes" of the individual and seeks the individual's relief.[4]  The EEOC even "takes the position that it may pursue a claim on the employee's behalf even after the employee has disavowed any desire to seek relief." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 291 (2002).[5]  And, to be clear, as the Supreme Court has recognized, there is a "manifest" difference between a claim of individual discrimination and a pattern-or-practice claim.  *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984).  There is no pattern-or-practice claim in this case.  This case involves claims of individual discrimination.

---

[4] *See, e.g.*, *E.E.O.C. v. CRST Van Expedited, Inc.*, 611 F. Supp. 2d 918, 929 (N.D. Iowa 2009) ("[T]he EEOC stands in the shoes of those aggrieved persons in the sense that it must prove all of the elements of their sexual harassment claims to obtain individual relief for them.").

[5] There are situations where the EEOC does not "stand in the employee's shoes," like compliance with Rule 23, as *Waffle House* recognized, *see* 534 at 297-98, but "proof" is not one of those situations.

**D.    Although it often is, the *Teamsters* evidentiary framework should not be conflated with a Section 707 action.**

There are three evidentiary frameworks for a plaintiff to prove a workplace discrimination claim, including those filed under Title VII. The first is "direct evidence" of discrimination. Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *See Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)). The second and third, by comparison, are evidentiary frameworks that utilize circumstantial evidence.

"Circumstantial evidence is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *See Geiger*, 579 F.3d. at 620. The most common framework used with circumstantial evidence is the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)—known, not surprisingly, as the *McDonnel Douglas* burden-shifting framework. The framework consists of a three-step process. It requires a plaintiff first to establish a prima facie case by presenting evidence from which a jury could find that "(1) [plaintiff] is a member of a protected class; (2) [plaintiff] was qualified for [the] job; (3) [plaintiff] suffered an adverse employment decision; and (4) [plaintiff] was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir.2008), cert. denied, 556 U.S. 1235 (2009). "Once the plaintiff establishes this prima facie case, the burden shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* "[I]f the defendant succeeds in this task, the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination." *Id.*

at 391–92.  While *McDonnell Douglas* is the most common, it is not the only framework that can be used with circumstantial evidence.  The other is the *Teamsters* framework.

The *Teamsters* framework was judicially created and promulgated as an evidentiary framework for pattern-or-practice claims filed by the government under Title VII.  True to its name, the *Teamsters* framework was first set forth in *Teamsters v. United States*, 431 U.S. 324 (1977).  Like *McDonnell Douglas*, the *Teamsters* framework is a burden-shifting framework. Under *Teamsters*, a plaintiff has a higher initial burden and must establish "that unlawful discrimination has been a regular procedure or policy followed by an employer or a group of employers."  *Teamsters*, 431 U.S. at 360.  The framework then shifts burdens between the parties.  *See id*. at 632.

At present, the *Teamsters* framework has also been adopted and utilized by private plaintiffs.  The most well-known example of this is *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  Nearly fifty years since *Teamsters* and more than ten years since *Dukes*, cases are now littered with references to "pattern or practice claims" and convoluted discussions about whether and when "*Teamsters*" can be used to establish a "pattern or practice" claim.  It is a linguistic minefield, and one that the Parties no longer dispute in this case.  "[T]he 'pattern or practice' terminology," the EEOC has told the Court, is a reference to the "evidentiary framework" on which the EEOC intends to rely.  (*See* Response in Opposition to Motion to Dismiss, Doc. 48, PageID 314.)  There is no pattern-or-practice claim in this case.  This case involves claims of individual discrimination.  Any reference to *Teamsters* or "pattern or practice" is a reference to an evidentiary framework.

III.    LEGAL STANDARDS APPLICABLE TO BIFURCATION

A.    The Court's role in shaping the discovery process is an important one,
especially following the 2015 amendments to the Rules of Civil Procedure.

"Determining the scope of discovery is within the Court's discretion." *Tipton v.
OhioHealth Grady Mem'l Hosp.*, 2022 WL 1469813, at *2 (S.D. Ohio May 10, 2022) (citing
*Bush v. Dictaphone Corp.,* 161 F.3d 363, 367 (6th Cir. 1998)).  As the Sixth Circuit has
affirmed, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally
quite broad."  *Id.* (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)).
However, the 2015 revisions to the Rules "encourage judges to be more aggressive in identifying
and discouraging discovery overuse."  *See* Fed. R. Civ. P. 26, Advisory Committee Notes to the
2015 Amendment).

Courts, in turn, have since cautioned that "[d]iscovery. . .[is] not limitless, and parties
must be prohibited from taking 'fishing expeditions' in hopes of developing meritorious claims."
*Adkisson v. Jacobs Eng'g Grp., Inc.,* 2020 WL 8254452, at *3 (E.D. Tenn. Dec. 10, 2020)
Courts, of course, "have broad discretion under the rules of civil procedure to manage the
discovery process." *Marie v. Am. Red Cross,* 771 F.3d 344, 366 (6th Cir. 2014).  Rule
26(b)(2)(C), in fact, empowers the Court to limit even the frequency and extent of discovery for
various reasons.  Ultimately, "[a] court must balance the right to discovery with the need to
prevent fishing expeditions."  *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236-37
(6th Cir. 2016) (internal quotations and citation omitted). "[T]he desire to allow broad
discovery," the Sixth Circuit has affirmed, "is not without limits and the trial court is given wide
discretion in balancing the needs and rights of both plaintiff and defendant."  *Surles v.
Greyhound Lines, Inc.*, 474 F. 3d 288, 305 (6th Cir. 2007) (quoting *Scales v. J. C. Bradford*, 925
F. 2d 901, 906 (6th Cir. 1996)).

The balance and limits of discovery apply to the EEOC, too. "When the government or one of its agencies comes into court (with very few exceptions), it is to be treated in exactly the same way as any other litigant." *E.E.O.C. v. Los Alamos Constructors, Inc.*, 382 F. Supp. 1373, 1375 (D.N.M. 1974). The EEOC "cannot make up special procedural or substantive rules for itself to suit its circumstances." *E.E.O.C. v. Summer Classics, Inc.*, 41 F. Supp. 3d 1287, 1289 (N.D. Ala. 2011), *aff'd*, 471 F. App'x 868 (11th Cir. 2012). This is especially true where the EEOC seeks to restart (or expand) its administrative, pre-suit investigation, as it appears to want to do in this case. *See, e.g.*, *E.E.O.C. v. ABM Indus. Inc.*, 2008 WL 5385618, at *8 (E.D. Cal. Dec. 23, 2008) (rejecting the EEOC's "fishing expedition" to "search for other employees with colorable claims"); *E.E.O.C. v. Target Corp.*, 2007 WL 1461298, at *3 (E.D. Wis. May 16, 2007) ("The EEOC may not use discovery in the resulting lawsuit "as a fishing expedition" to uncover more violations." (internal quotation and citation omitted)).

### B.    Neither *Teamsters* nor *Serrano* necessitates bifurcation in a Section 706 action, and neither identifies the factors to consider or standards to apply.

*Teamsters* arose out of a pattern-or-practice claim, not a claim for individual relief under Section 706. For a Section 706 action, *Teamsters*, on its face, does not even apply, and it certainly does not require bifurcation of any kind. It does not recommend it, and it does not speak to the factors to consider nor standards to apply with respect to bifurcation. Congress could have codified *Teamsters* as part of Section 706 when it amended Title VII in 1991. It declined. Instead, when addressing the 1991 amendments to Title VII, including those to Section 706, the Congressional record makes clear that Congress intended to supersede *Teamsters*: "In fact, there are an additional twenty cases, not usually named by the proponents of the legislation which are either overturned or modified by the bill. These are: . . . *Teamsters v. United States*, 431 U.S. 324 (1977) . . . ." *See* H.R. REP. 102-40, 81, 1991 U.S.C.C.A.N. 694, 767, n.5.

Despite Congress making clear its view of *Teamsters*, the question of using any *Teamsters*-style framework in a Section 706 action continued to persist.  In other words, could the government—the EEOC—utilize the evidentiary framework if it did not file under Section 707.  Could the *Teamsters* evidentiary framework be used to prove an individual claim of discrimination in a Section 706 action?  The Sixth Circuit decided this very question in 2012 in *Serrano*.  But the Sixth Circuit did not go as far as the EEOC contends.  The Sixth Circuit did not apply the *Teamsters* model in a Section 706 action, as the EEOC argues.  (*See* Brief in Support, Doc. 56-1, PageID 380-81.)  Rather, the Sixth Circuit simply affirmed that no earlier Sixth Circuit decision had forbidden it.  "[T]here appear to be no Sixth Circuit decisions to date," recognized the Sixth Circuit, "holding that *Teamsters* may not be applied in the § 706 context." *Serrano v. Cintas Corp.*, 699 F.3d 884, 895 (6th Cir. 2012).  The Sixth Circuit thus considered "whether the EEOC may employ the *Teamsters* framework only when it acts pursuant to § 707" and concluded "that the EEOC's enforcement authority is not so limited." *Id*. at 894.[6]  In fact, the ultimate holding from *Serrano* is simply that the EEOC was not required to plead in the complaint the evidentiary framework on which it would rely; the EEOC did not have to make reference to *Teamsters*.  *See generally id*. at 896-899 (discussing pleading requirements). *Serrano* does not require bifurcation of any kind in any action filed by the EEOC.  It does not require bifurcation of any kind.  It does not recommend it, and it does not speak to the factors to consider nor standards to apply with respect to bifurcation.

---

[6] The *Serrano* decision is hotly debated and critiqued within other Circuits.  Defendants disagree with it—and note their objection to it—but accept it as a published decision from the Sixth Circuit.

**C.    Federal Rule of Civil Procedure 42 controls and provides the framework for any bifurcation request.**

Rule 42 allows for the court to order "a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims" when warranted by certain circumstances, including "for convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42.  When granting a request to bifurcate a trial, courts can order an accompanying bifurcation of discovery even though it is not explicitly provided for by Rule 42. *See SCF, LLC v. Hartford Fire Ins. Co.*, 2021 WL 3549130, at *4 (W.D. Tenn. May 5, 2021) (quoting *Honican v. Stonebridge Life Ins. Co.*, 2005 WL 2614904, at *2 (E.D. Ky. Oct. 13, 2005)) ("[A]lthough 'bifurcation of the trial does not necessarily require bifurcation of discovery,' 'one of the major benefits of bifurcation is the simplification of discovery'").

In addition to the three factors listed in the text of Rule 42, courts have specified multiple additional factors that should be considered when evaluating a request to bifurcate.  These factors include practical evidentiary considerations such as "whether resolution of a single issue would likely be dispositive of an entire claim," *In re Beverly Hills Fire Litig.*, 695 F.2d 207, 216 (6th Cir. 1982), and "whether the evidence and issues sought to be bifurcated are substantially different," *Farmers Bank of Lynchburg, Tennessee v. BancInsure, Inc.*, 2011 WL 2023301, at *1 (W.D. Tenn. May 20, 2011) *(citing Wilson v. Morgan,* 477 F.3d 326, 339 (6th Cir. 2007)).  *See also Fed. Express Corp. v. Accu-Sort Sys., Inc.*, 2005 WL 8156705, at *1 (W.D. Tenn. Mar. 31, 2005) (including "whether the evidence required for each issue is substantially different" as a factor to be considered in evaluating a request to bifurcate).  Other courts have also stressed the importance of fairness and potential prejudice to the opposing party in evaluating a request for bifurcation under Rule 42.  *See Wilson,* 477 F.3d at 339 ("[T]he court should consider several facts, including the potential prejudice to the parties,"); *Fed. Express Corp.*, 2005 WL 8156705,

at *1 ("Factors to be considered include . . . whether one party would gain some unfair advantage from separate trials").

Ultimately, the decision of whether to bifurcate is "dependent on the facts and circumstances of each case," *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996), and lies within the discretion of the district court, *see Farmers Bank of Lynchburg, Tennessee v. BancInsure, Inc.*, 2011 WL 2023301, at *1 (W.D. Tenn. May 20, 2011) (citing *Payne v. A.O. Smith Corp.,* 99 F.R.D. 534, 536 (S.D.Ohio 1983) ("Whether to bifurcate is left to the sound discretion of the trial judge")).  The party moving for bifurcation—here, the EEOC—bears the burden of showing that it is appropriate.  *See Farmers Bank*, 2011 WL 2023301, at *1.

### D.     The Rules Enabling Act operates as a check and balance on any district court's use of Rule 42.

The REA, or Rules Enabling Act, mandates that "court-created procedural rules . . . 'shall not abridge, enlarge, or modify any substantive right.'"  *Whitlock v. FSL Management, LLC*, 843 F.3d 1084, 1092 (6th Cir. 2016) (quoting 28 U.S.C. § 2072(b)).  When a procedural device or rule "governs only 'the manner and the means' by which the litigants' rights are 'enforced,' it is valid; if it alters 'the rules of decision by which [the] court will adjudicate [those] rights,' it is not."  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (alteration in original) (quoting *Miss. Pub. Corp. v. Murphree*, 326 U.S. 438, 446 (1946)).  Any bifurcation procedure used by a district court is procedural; it would arise out of Rule 42.  There is no substantive or statutory right to bifurcation of any kind.  Because bifurcation is a rule-based procedure, the REA acts as a check and balance on the district court's discretion to utilize it. Bifurcation cannot be used to—and shall not be used when it would—abridge, enlarge, or modify a litigant's substantive right.

IV.   <u>ARGUMENTS & AUTHORITIES</u>

The EEOC's Motion is premised on this being a pattern-or-practice action, a Section 707 action. It is not. This is not a Section 707 action. There is no pattern-or-practice claim. "[T]he 'pattern or practice' terminology," the EEOC has told the Court, is a reference to the "evidentiary framework" on which the EEOC intends to rely. (*See* Response in Opposition to Motion to Dismiss, Doc. 48, PageID 314.) Accordingly, the EEOC's reliance on decisions involving pattern-or-practice claims or pattern-or-practice cases is misplaced. Whether the "Sixth Circuit has long upheld the use of a *Teamsters* bifurcation model in trying pattern-or-practice cases," as the EEOC argues (Brief, Doc. 56-1, PageID 379), is not a question before the Court. The Sixth Circuit has not done so, but the question is not relevant to this action.[7] This is not a pattern-or-practice action, and there is not pattern-or-practice claim.

This also is not a private action—the EEOC filed it, not an individual plaintiff—and it is not a "class action." When the EEOC uses the word "class" it has no procedural or legal relevance. As a result, the EEOC's reliance on private actions, like *Woolridge* (Brief, Doc. 56-1, passim), and class actions, like *Cooper* (*id.*), is again misplaced.

Finally, the Sixth Circuit did not apply "the *Teamsters* model in *Serrano*," like the EEOC repeatedly claims. (*See, e.g.*, Brief, Doc. 56-1, PageID 380.) The Sixth Circuit affirmed that the EEOC was not required to plead its anticipated reliance on a *Teamsters*-style evidentiary framework. Defendants further address this and their other opposition arguments below.

---

[7] Additionally, *Monarch*, to which the EEOC cites when touting the Sixth Circuit's reliance on a *Teamsters* bifurcation model in trying pattern-or-practice cases, is from 1980, well before Congress amended Title VII, including Section 706, in 1991.

### A.    The EEOC's Motion is premature and should be denied accordingly.

Bifurcation is premature given that no discovery has occurred.  The individuals on behalf of whom the EEOC filed this action, for example, remain known only to the EEOC.  Bifurcation is also premature in that no aspect of this action is ready for trial, and the authorities on which the EEOC relies speak to bifurcating *trial*, not the entire case.  Defendants discuss the second in greater detail below in connection with the REA.  For now, Defendants focus on the first.

Courts regularly find that bifurcation is premature when discovery has not yet commenced.  In *Gaffney v. Federal Insurance Company*, for example, the defendant insurance company moved to bifurcate plaintiff's bad faith claim from their policy coverage claim.  *See* 2008 WL 3980069, at *1 (N.D. Ohio Aug. 21, 2008).  At the time of defendant's motion, the parties had not yet engaged in any discovery and there had been no substantive motion practice.  *Id.* at *3.  Because it was unclear whether the coverage claim would be dispositive of the bad faith claim and the court did not have enough information to evaluate defendant's vague allegations that "allowing discovery of the bad faith claim [would] prejudice its ability to defend the coverage claim," the court denied the motion to bifurcate as premature.  *Id.*  "Many of the facts and circumstances that are relevant to the balancing of interests required of the Court in exercising its discretion to bifurcate are unknown at this time."  *Id.*; *accord* Woods v. State Farm Fire & Casu. Co.*, 2010 WL 1032018, at *3 (S.D. Ohio Mar. 16, 2010).  Here, too, in this case, virtually all of the relevant facts and circumstances remain unknown.

Similarly, in *Rosen v. Reckitt & Colman, Inc.*, a class of plaintiffs brought various employment claims against a defendant-employer, including violations of the FLSA and ADEA.  *See* 1994 WL 652534, at *1 (S.D.N.Y. Nov. 17, 1994).  The plaintiffs moved for bifurcation at the beginning of discovery and asked to bifurcate into two stages: "a single 'macro' trial, concerned with common issues of liability; and a series of 'micro' trials focusing on issues of

liability and damages as they pertain to individual class members." *Id.* Plaintiffs likewise

moved for a protective order preventing defendant from conducting class-wide discovery,

agreeing "to produce only those few class members they intend to call as witnesses in the macro

trial." *Id.* The *Rosen* court sided with the defendant on both fronts. These determinations, the

court explained, "would be inappropriate before the substantial completion of discovery." *Id.*

As a final example, the timing of the EEOC's Motion is similar to the timing in *Krueger*

*v. New York Telephone Co.*, 163 F.R.D. 446 (S.D.N.Y. 1995). In *Krueger*, a group of former

employees brought an action against their former employer. *Id.* at 448. Shortly after moving to

maintain conditionally certify their ADEA claims, the plaintiffs moved to bifurcate liability and

damages issues under Rule 42(b). *Id.* The *Krueger* court held that "Plaintiffs' motion for

bifurcation is plainly premature," in part, because "discovery is not yet complete." Specifically,

the court stressed the uncertainty of the issues for trial as a reason against early-stage bifurcation:

"The continuing development of the factual record in this case may well affect the issues to be

tried and the presentation of those issues in the Joint Pretrial Order . . . Moreover, both plaintiffs

and defendants have indicated their intention to move for summary judgment. The disposition of

those motions may alter or narrow the issues that remain to be tried." *Id.* at 448-49; *see also id.*

at 449 (declining to bifurcate now is "[c]ertainly . . . more efficient and less onerous than a

procedure that defers an entirely new round of unspecified discovery until some indefinite future

date").

The Parties have yet to commence discovery in this case and, in support of its Motion, the

EEOC offers nothing that demonstrates this action will involve "hundreds, if not thousands, of

aggrieved individuals." (Brief, Doc. 56-1, PageID 377.) The EEOC possesses this

information—it knows the identity of the individuals on behalf of whom it filed suit—but it has

not shared the information. The Parties, in turn, cannot reasonably know the issues on which to conduct discovery, and they certainly cannot know the issues to be tried. They, therefore, cannot substantively analyze the appropriateness of bifurcation on one or more issues. It is simply too soon. *See also Wakefield v. Olen Properties Corp.*, 2022 WL 16966532, at *2 (C.D. Cal. May 12, 2022) (denying a motion to bifurcate because "the Court does not have the information necessary to decide whether bifurcation would be convenient, avoid prejudice, or expedite and economize the present litigation for the purposes of trial"). The EEOC's Motion is premature. It should be denied.

**B.    Even on the minimal facts before the Court, Rule 42's factors weigh against bifurcation.**

The EEOC spends much of its time focusing on only two factors relevant to bifurcation: convenience and judicial economy. "[T]he early stage of litigation makes a clear determination of judicial economy favoring bifurcation in this case speculative at best." *Est. of McIntosh v. City of Chicago*, 2015 WL 5164080, at *9 (N.D. Ill. Sept. 2, 2015). The same is true here. As for convenience, as discussed below in connection with the REA, bifurcation like the EEOC seeks would be "convenient" only to it. The remaining factors likewise weigh against bifurcation at this time.

There is likely significant overlap of issues and evidence between the EEOC's proposed phases of discovery. Even the EEOC argues that it "would only have to conduct discovery . . . for a significantly smaller pool of potential aggrieved individuals" to continue after its Phase 1. (Brief, Doc. 56-1, PageID 384.) In other words, the evidence overlaps. Moreover, mitigation evidence, for example, would be applicable in both of the EEOC's proposed phases. If employees obtained work elsewhere, it shows they mitigated their damages. But it also shows why they may have stopped reporting for assignments or stopped seeking assignments. The

same is true with health-related evidence (e.g., medical records).  A medical record may show
how employees have been damaged, but it may also show why an employee stopped working.  In
all, based on what little is known at this time, the overlap of evidence and issues weighs against
bifurcation.  *See Farmers Bank of Lynchburg, Tennessee,* 2011 WL 2023301, at *1;  *Andrade v.
Rambosk*, 2023 WL 2077427, at *2 (M.D. Fla. Feb. 17, 2023) ("At the discovery stage,
bifurcating intertwined issues can lead to confusion and more judicial intervention to resolve
disputes."); *Periodontal Assocs. of Memphis, P.C. v. Peerless Indem. Ins. Co.*, 2017 WL
4122623, at *4 (W.D. Tenn. Sept. 18, 2017)  (Finding that, when the same discovery could be
used for both phases of the purposed bifurcation scheme, bifurcation of discovery "would be
inefficient and inconvenient"); *Charvat v. Plymouth Rock Energy, LLC*, 2016 WL 207677, at *2
(E.D.N.Y. Jan. 12, 2016) (denying a motion to bifurcate discovery in a consumer protection case,
in part, because "much of the discovery sought appears relevant to both the class and individual
claims"); *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, 2008 WL 4823069, at *4 (S.D. Ohio
Nov. 3, 2008) (declining to bifurcate discovery where the evidence relevant to each proposed
phase "involve similar factual issues and appear to be intertwined").

The prejudicial impact of the EEOC's bifurcation request is further addressed below in
connection with the REA and the EEOC's continuing to keep secret the identity of the
individuals on behalf of whom it has filed suit.  *See, e.g.*, *Serrano v. Cintas Corp.*, 2010 WL
1417802, at *4 (E.D. Mich. Apr. 5, 2010) ("Defendant quite reasonably seeks to focus attention
upon specific women on whose behalf the EEOC intends to seek damages. The information
sought is relevant to the issues in controversy in both stages, and the EEOC has no principled
reason to withhold it.").

Finally, the burdens of the EEOC's bifurcation request do not serve the interests of judicial economy. This is likewise addressed in this Brief as a whole, but there is one particular point Defendants wish to reiterate. If the EEOC loses in its version of a Phase 1 trial, the EEOC explains in its Brief, it would go on to conduct additional discovery and attempt to prove discrimination "on an individual basis." (Brief, Doc. 56-1, PageID 384.) In other words, if not successful the first time, the EEOC would try again utilizing, presumably, a different evidentiary framework. The EEOC's bifurcation request is not about judicial economy at all. It is about having multiple bites at the apple. This is improper and further weighs against bifurcation at this time. *See also E.E.O.C. v. New Indianapolis Hotels, LLC*, 2012 WL 364052, at \*1–2 (S.D. Ind. Feb. 1, 2012) ("[T]he bifurcation of discovery results in an even greater inefficiency; namely, delaying discovery on applicant class members' individual damages until after liability is decided necessitates a separate jury be empaneled to decide damages. Empaneling and familiarizing a new jury burdens the Court and the parties far more than unified discovery does."); *E.E.O.C. v. Ruby Tuesday, Inc.*, 2011 WL 13364669, at \*1 (W.D. Pa. Dec. 27, 2011) ("Contrary to plaintiff's position, the court finds that (1) judicial economy, (2) the convenience of (a) the parties, (b) the potential witnesses and (c) each potential class member that may qualify for consideration of individual remedial relief, and (3) the equities as they relate to both litigants weigh in favor of rejecting the plaintiff's "test the waters first" approach. In other words, they weigh in favor of completing all discovery before undertaking the task of adjudicating the parties' dispute to final resolution.").

### C.    Bifurcation like the EEOC seeks would violate the Rules Enabling Act.

While true that, when granting a request to bifurcate trial, courts can order an accompanying bifurcation of discovery, to do so as the EEOC requests would violate the REA. The cases cited by the EEOC, to be sure, largely focus on the bifurcation *of trial*. A bifurcation

of liability and remedial phases of trial, much like bifurcating the liability and punitive damage phases of trial. But the EEOC goes further—well, admittedly, goes backwards from trial—and asks the Court to structure and restrict discovery. "Full-blown discovery" is what the EEOC hopes to avoid. (*See, e.g.*, Brief, Doc. 56-1, PageID 381-82.) The EEOC would rather not conduct "full-blown discovery," for example, because "most aggrieved individuals would not be able to provide testimony bearing on the existence of a pattern or practice of discrimination." (*Id.* at 382.) The absence of testimony bearing on the existence of any discrimination is evidence that no discrimination occurred. That evidence is critical to Defendants' defenses at any stage. The EEOC would also like to avoid "additional depositions of witnesses supporting [its] claims." (*Id.*) Depositions of the EEOC's supporting witnesses are also critical to Defendants' defenses at any stage. Finally, the EEOC would only disclose "some aggrieved individuals." (*Id.*)

The EEOC filed this action on behalf of individuals. It has to prove each individual is entitled to relief, as well as the extent of that relief. Under the Seventh Amendment to the United States Constitution, "the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. Defendants' right to a jury trial is a substantive right. The right to invoke Title VII statutory and other defenses are also substantive rights. The EEOC's request would restrict from the outset Defendants ability to investigate and prepare defenses in connection with each of the individuals on behalf of whom the EEOC filed suit. To do so would modify and abridge Defendants' substantive rights in violation of the REA. Bifurcation like the EEOC seeks would violate the REA. The EEOC's Motion should be denied.

**D.     The EEOC knows the identity of the individuals on behalf of whom it filed this lawsuit and, in the face of bifurcation, keeping secret the identity of those individuals is plainly prejudicial.**

As Defendants argued in the earlier discovery briefing, *how* the EEOC intends to prove its case is not relevant to the identity of the individuals on behalf of whom it filed suit. *Teamsters*, Rule 42, *Serrano*—nothing shifts Section 706 focus away from the individuals on behalf of whom the EEOC filed suit.  If the EEOC wished to make this case about a nameless pattern or faceless practice, it was free to file under Section 707.  It did not.  It filed under Section 706.  It filed suit on behalf of specific individuals.  We need to know who they are.  The EEOC continues to keep it a secret.

On remand, the *Serrano* district court addressed this and, for example, chastised the EEOC for continuing to rely on a "class description" and not providing the names of the individuals.  "[T]o be clear," the district court was forced to explain, "the EEOC's interrogatory response is insufficient because it does not identify the names of the individual claimants on whose behalf it intends to seek monetary damages in this action." *E.E.O.C. v. Cintas Corp.*, 2015 WL 13021471, at *2 (E.D. Mich. Aug. 20, 2015).  "Even if the EEOC intends to establish discrimination on the basis of statistics and statistical shortfall . . . even if trial is ultimately bifurcated into separate liability and damage phases," another district court explained, "the EEOC must ultimately prove the identities of the specific women the EEOC claims suffered damages . . . [the employer-defendant] is entitled to know such information in discovery . . . ." *E.E.O.C. v. Presrite Corp.*, 2012 WL 4434055, at *14 (N.D. Ohio Sept. 24, 2012).  Section 706's focus remains on the individuals on behalf of whom the EEOC filed suit.  *Teamsters*, Rule 42, *Serrano*—they do not change that.

## V.   CONCLUSION

There may come a time when the Parties are in a position to substantively address whether further discovery or trial should be bifurcated.  But, at present, we still do not even know the identity of the individuals on behalf of whom the EEOC seeks to do that discovery and on behalf of whom it seeks to have any trial.  For Defendants to credibly address—and, Defendants submit, for the Court to decide—how to litigate or try the claims in this action, we need to know the identity of the individuals on behalf of whom this action was filed.  The EEOC has this information.  The EEOC has yet to share it.  The EEOC's Motion to Bifurcate is premature and, as detailed above, the EEOC has not otherwise met its burden.  The Motion should be denied.

Respectfully submitted, this, the 22nd day of September, 2023.

*s/ Zachary B. Busey*
**ZACHARY B. BUSEY**
Tennessee Bar No. 29763
zbusey@bakerdonelson.com

**WHITNEY M. DOWDY**
Tennessee Bar No. 24985
wdowdy@bakerdonelson.com

**MARY KATHERINE SMITH**
Tennessee Bar No. 35328
mkcampion@bakerdonelson.com

**DEAN J. SHAUGER**
Tennessee Bar No. 39746
dshauger@bakerdonelson.com

BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
(901) 526-2000 – telephone

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the Clerk of the

Court using the ECF system, which sent notification of such filing to all counsel of record.

This, the 22nd day of September, 2023.

*s/ Zachary B. Busey*

**ZACHARY B. BUSEY**

4876-5539-7505