IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) | |
| Plaintiff, ) ) ) | Civil Action No.2:22-cv-02668-SHL-tmp |
| v. ) ) | |
| SUPREME STAFFING LLC; BETTER PLACEMENTS PERSONNEL LLC; AND INSPIRE HOTEL STAFFING, LLC, ) ) ) ) ) | JURY DEMAND |
| Defendants. ) | |

**BRIEF IN SUPPORT OF MOTION TO RECONSIDER ORDER ON DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO CERTIFY INTERLOCUTORY APPEAL**

I.   **RELEVANT BACKGROUND**

Francisco Alvarez previously worked for Supreme Staffing.[1]  On April 11, 2019, Mr. Alvarez, a Hispanic Male, filed a charge of discrimination against Supreme Staffing and charged National Origin discrimination and retaliation ("the Charge"). The Charge—his Charge—is the only charge of discrimination identified in the Amended Complaint.  (*See, e.g.*, Amended Complaint, Doc. 41, ¶ 11.)  This lawsuit makes no claim on Mr. Alvarez's behalf and seeks no relief on his behalf, not in whole or in part.  This lawsuit, instead, alleges Race discrimination (Black/African American) against all Defendants.[2]  This lawsuit does so on behalf of individuals identified for the first time in the Complaint.  None of these individuals ever filed a charge of

---

[1] Defendant Supreme Staffing LLC.

[2] Supreme Staffing, as well as Defendant Better Placements Personnel LLC, and Defendant Inspire Hotel Staffing LLC.

discrimination against any Defendant, much less one for Race discrimination.  The EEOC also never notified any Defendant about any investigation into their Race-based claims nor that any investigation was underway with regard to their (or anyone else's) Race-based claims.

On April 20, 2023, Defendants moved to dismiss the Amended Complaint and this action, arguing that the Race-based claims comprising Counts I and II do not come within Title VII's statute of limitations.  (*See generally*, Motion to Dismiss, Doc. 45; Memorandum in Support, Doc. 46.) Defendants argued that the Counts are time barred and should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*Id.*)  Defendants further argued that Count III, a recordkeeping count, is not a plausible claim and should likewise be dismissed with prejudice. (*Id.*)

On August 10, 2023, the Court denied Defendants' Motion to Dismiss.  (*See* Order, Doc. 52.) The Court's ruling is discussed in greater detail below.  In short, the Court (1) construed the Alvarez Charge to be one for discrimination based on Race (Black/African American); (2) ruled that his Charge gave Defendants notice of both classwide Race discrimination claims and the EEOC's investigation into them; and (3) found that Plaintiff adequately pleaded a violation of Section 709, which requires an employer to maintain records "[i]n connection with any investigation of a charge."

Thereafter, on August 15, 2023, the EEOC filed a separate lawsuit against Supreme and one of the entities for whom Supreme had provided temporary staffing services, Barrett Distribution Centers, LLC.[3]  In this action—the Barrett action—the EEOC brings claims on behalf of Mr. Alvarez and his Charge, albeit only a portion of it.  The EEOC filed no claim in

---

[3] *E.E.O.C. v. Barrett Distribution Centers, LLC et al.*, 2:23-cv-02507 (W.D. Tenn. August 15, 2023)

connection with any National Origin discrimination, but the EEOC did file a retaliation claim against Supreme. Mr. Alvarez, it turns out, had filed a separate charge of discrimination against Barrett. The Barrett Charge was filed on April 17, 2019. (*See* Exhibit A, Barrett Charge, Charge No. 490-2019-01594,) The Barrett Charge did not name Supreme nor any other Defendant in this action. Relying on the Barrett Charge, in this new lawsuit, the EEOC also filed a retaliation claim against Barrett. To summarize, filed after the Court denied Defendant's Motion to Dismiss, the Barrett action has two defendants, Supreme and Barrett. The Barrett action contains no discrimination claims, neither Race nor National Origin, but includes multiple counts of Title VII retaliation. The Barrett action is one of two lawsuits subsequently filed by the EEOC.

The second action—third overall—was filed by the EEOC on September 21, 2023. The EEOC filed it against Supreme and another entity for whom Supreme has provided temporary staffing services, Aaron Thomas Company, Inc.[4] In this action—the Aaron Thomas action—the EEOC repeats the Race discrimination claims filed in this action. Mr. Alvarez, it turns out, filed three charges of discrimination. The third named Aaron Thomas. It did not name Supreme nor any other Defendant in this action. The Aaron Thomas Charge charges Race discrimination and it is the basis for (what appear to be) the identical Race discrimination claims filed in this action and the Aaron Thomas action. (*See* Exhibit B, Aaron Thomas Charge, Charge No. 490-2020-00578.)

The EEOC never notified Defendants—any Defendant—of any investigation, finding, or conclusion related to or arising out of the Barrett Charge. The EEOC does not allege otherwise in this action nor in the Barrett action. The EEOC likewise never notified Defendants—any

---

[4] *E.E.O.C. v. Aaron Thomas Company, Inc. et al.*, 2:23-cv-02599 (W.D. Tenn. September 21, 2023)

Defendant—of any investigation, finding, or conclusion related to or arising out of the Aaron Thomas Charge. The EEOC does not allege otherwise in this action nor in the Aaron Thomas action.

## II.     ARGUMENTS & AUTHORITIES

### A. The Court can reconsider its Order on Defendants' Motion to Dismiss, and Defendants respectfully maintain that it should.

Defendants respectfully maintain that the Court can and should reconsider its Order denying Defendants' Motion to Dismiss. This Court has "significant discretion" to reconsider interlocutory orders. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 n.7 (6th Cir. 2004); *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir.1991) (affirming a district court's ability to reconsider interlocutory orders and reopen any part of a case before entry of final judgment). This discretion derives both from common law and Federal Rule of Civil Procedure 54(b), *Rodriguez*, F. App'x at 959, as well as Local Rule 7.3. Overall, the discretion is "[d]irected to a court's good sense so as to relieve a court of rigid adherence to its former decisions." *Petition of U. S. Steel Corp.*, 479 F.2d 489, 494 (6th Cir. 1973). "Traditionally," the Sixth Circuit has explained, "courts will find justification for reconsidering interlocutory orders when there is . . . new evidence available or a need to . . . prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959; *see also Williams v. Notesi's Supermarket*, 2014 WL 4199541, at *6 (W.D. Tenn. Aug. 25, 2014) (reconsidering interlocutory order "[i]n light of new information before the court"). Similarly, under Local Rule 7.3, reconsideration of an interlocutory order is permitted because of "the occurrence of new material facts occurring after the time of such order" or because of a failure to consider "dispositive legal arguments that were presented to the Court before such interlocutory order." *See* L.R. 7.3(b). In addition, even when there are no specific grounds for reconsideration, courts have nevertheless undertaken it when it

is in the "best interest of justice and judicial economy." *Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, 2010 WL 3925261, at *2 (W.D. Tenn. Sept. 29, 2010).

Here, reconsideration of the Court's Order is warranted, at a minimum, given the subsequent filing of the Barrett and Aaron Thomas actions. This is especially true given that the Aaron Thomas action (a) finally identifies the charge of discrimination containing the Race discrimination allegations and (b) copies the factual allegations and claims in this action. *See E.E.O.C. v. Aaron Thomas Company, Inc. et al.*, 2:23-cv-02599, Complaint, Doc. 1, PageID 5-12 (W.D. Tenn. Sept. 21, 2023). The Aaron Thomas action and the facts alleged therein make clear that the EEOC's Race-based investigation—and the current Race-based claims—grew out of the Aaron Thomas Charge, not the National Origin and retaliation Charge filed by Mr. Alvarez against Supreme. Both actions additionally reinforce that no Defendant in this action was ever given notice of any Race-based investigation by the EEOC, at least not any earlier than the Letter of Determination to Defendants, which is the date of notice offered and argued by the EEOC. These subsequent filings, on the whole, are new information and a material change in circumstance that warrant reconsideration of the Court's Order.

Additionally, Defendants respectfully submit that rulings within the Court's Order are contrary to applicable law and, at times, contrary to controlling law. These rulings are: (1) construing the Alvarez Charge to have charged Race discrimination; (2) finding that the Alvarez Charge, as of the date it was filed with the EEOC, put *all* Defendants on notice of the EEOC conducting an investigation into "classwide" Race-based claims; (3) finding that the EEOC can proceed on claims time barred at the time this action was filed; (4) finding that Section 709(c) permits the type of "recordkeeping" claim the EEOC has filed.

The foregoing, Defendants respectfully submit, provide the Court with grounds to reconsider its Order, and Defendants respectfully urge the Court to do so.

### B. Upon reconsideration, Defendants' Motion should be granted.

#### 1. In construing the Alvarez Charge to be a charge for Race discrimination, the Court's ruling conflicts with at least one published Sixth Circuit decision.

No charge of Race discrimination has been filed against any Defendant, and the Amended Complaint does not allege otherwise. (*See generally*, Amended Complaint, Doc. 41.) Defendants only learned of any individual charging Race discrimination when the EEOC filed this action. (Doc. 52 at PageID 209-291.) That filing—that notice—sets Title VII's statutory period. The EEOC asserted and argued that the notice came earlier, specifically when it sent Defendants the Letter of Determination. (*See* Response, Doc. 48, PageID 305.) Regardless of whether notice came with the Letter of Determination or the filing of this action, Count I and Count II are barred by Title VII's statute of limitations. The Court, however, in its Order, did not analyze Title VII's statute of limitations based on either event.

Instead, the Court construed the Alvarez Charge to be a charge for Race discrimination, stating: "Alvarez's Charge constitutes of charge of race discrimination against Defendant Supreme Staffing, the employer named in his Charge." (Doc. 52 at PageID 346.) As a result, the Court continued, "Supreme Staffing was therefore put on notice of potential classwide racial discrimination claims upon the filing of the Charge on April 11, 2019, not the filing of the Complaint as Defendants argue." (*Id.*) The Court's ruling conflicts with at least one published Sixth Circuit decision. "While there may be overlap between the concepts of race and national origin themselves," affirmed the Sixth Circuit, "we find that the remaining Plaintiffs," the Race discrimination plaintiffs, "are unable to piggyback on Plaintiff Rivera's charge," which charged

National Origin discrimination, not Race discrimination.  *Peeples v. City of Detroit*, 891 F.3d 622, 633 (6th Cir. 2018).  The Sixth Circuit has affirmed that a National Origin charge of discrimination cannot be construed to be a Race charge of discrimination.  The Sixth Circuit's published decision, Defendants respectfully submits, binds this Court.

The Court should reconsider its Order and, at a minimum, apply *Peeples* as precedent that binds this Court.  Applying the binding decision, the statute of limitations would run not from the Alvarez Charge, but from the Letter of Determination (at the earliest) or the filing of this action (at the latest).  Regardless of which, Count I and Count II are barred by Title VII's statute of limitations.  Upon reconsideration, they should be dismissed with prejudice.

        **2. In finding that Defendants (any Defendant) received notice of a Race-based investigation by the EEOC, the Court's ruling conflicts with applicable and controlling authorities.**

Even if the law allowed the Alvarez Charge could be construed as a charge of Race discrimination, it does not notify Defendants—any Defendant—of any expanded investigation into any individual charging Race discrimination.  It also does not notify Defendants—any Defendant—of any investigation into any of the individuals identified in the Amended Complaint, much less a now-alleged "class" of individuals.  The Amended Complaint does not allege otherwise. Again, the EEOC asserted and argued in opposition that Defendants received notice (at the earliest) with the Letter of Determination: "**The Letter of Determination Gave Defendant Employers Sufficient Notice of the Race Claims Alleged Against Them**."  (Response, Doc. 48, PageID 305 (emphasis in original)).  Accepting the EEOC's position, Count I and Count II are barred by Title VII's statute of limitations, as explained above.

The Court, however, did not accept the EEOC's position—nor Defendants' other arguments.  Instead, in its Order, the Court ruled that the Alvarez Charge notified Defendants of

what the EEOC was investigating.  The Court explained that the allegation in the Charge that "I am aware that Black job applicants were turned away from seeking employment and the open jobs were given to Hispanics" is sufficient to "put Supreme Staffing on notice that Alvarez's Charge 'would prompt the EEOC to investigate a different, uncharged claim.'"  (Order, Doc. 52, PageID 346) (citing *Spengler v. Worthington Cylinders*, 615 F. 3d 481, 490 (6th Cir. 2010)).  In reaching this conclusion, the Court relied on the "expected scope of the investigation test." (*Id.* at PageID 345 (citing Spengler, 615 F.3d at 490)).  The Court further explained that "[t]he weight of Sixth Circuit precedent runs counter to Defendants' argument that Alvarez's failure to check the proper box on the charge form constitutes a failure to provide proper notice."  (*Id.*) Defendants made arguments beyond which box was checked.  The Court's Order does not address them.  Notwithstanding, the Court's ruling, Defendants submit, conflates and creates a false equivalence between what the EEOC *could* investigate based on the Alvarez Charge and whether it ever notified any Defendant that it was undertaking an expanded investigation.

     Defendants Motion did not challenge whether the EEOC could expand its investigation nor whether it did.  The Motion challenged whether the EEOC filed timely claims on behalf of the individuals for whom it seeks relief.  This challenge turned on whether the EEOC notified Defendants about their claims or any expanded investigation into them.  The EEOC did not, at least not until the Letter of Determination, as the EEOC asserted and argued in opposition to Defendants' Motion.  *Dixon*, *Bray*, and *Spengler*—these cases deal only with whether a cause of action is reasonably expected to grow out of the charge of discrimination.  They are inapposite. Defendants did not challenge whether any claim *could* grow out of the Alvarez Charge, nor even whether they did.  The challenge centers on when Defendants—any Defendant—were notified

that they had.  The "expected scope of the investigation test" does not inform that challenge.  It is not a timeliness test.

As for a timeliness test, Defendants directed the Court to *Princeton Healthcare System* and *Freeman*.  The EEOC offered no rebuttal to either.  The Court nevertheless rejected Defendants' reliance on both.  (Order, Doc. 52 PageID 341-342, n.3.)  The Court, instead, relied on *Norfolk*.  *See E.E.O.C. v. Norfolk S. Corp.*, 2018 WL 4334615 (W.D. Penn. Sept. 11, 2018).  "There," the Court explained,  the [*Norfolk*] court noted that the holdings in both Princeton Healthcare and Freeman, which held that the 'filing date' of the charge of discrimination ran from when the EEOC notified the defendant-employer of the expanded investigation, applied only where the EEOC brings allegations of discrimination in its complaint that fell outside of the allegations in the initial charge."  (Doc. 52, PageID 342.)  Indeed, the Court also stated, "Defendants seem to be attempting to divorce the question of 'notice' from the rest of the pre-suit process; such line-drawing here makes little sense."  (*Id*.)  *Norfolk*, however, like *Princeton* and *Freeman*, support doing just this, and all three support Defendants' timeliness arguments.

In distinguishing *Princeton* and *Freeman*, the *Norfolk* court made clear that, "[a]ny equitable exception to the charge filing date would not apply here, as the charge specifies a category of discrimination identical to that in the EEOC's complaint, *i.e.* disability discrimination by [defendant-employer's internal medical department]."  2018 WL 4334615, at *7.  That is not so in this action.  Not even the EEOC has argued that the categories of discrimination from the Alvarez Charge are "identical" to those in this action.  Any distinguishing of *Princeton* and *Freeman* on "identical" grounds, like done by the *Norfolk* court, cannot be applied in this action.

Additionally, in *Norfolk*, there were two "classes" of individuals on behalf of whom the EEOC sought relief.  *Id.* at *8.  Neither filed charges of discrimination.  *Id.* The *Norfolk* court

ultimately ruled that the EEOC had filed timely claims, beginning its analysis with a general summary of the EEOC's pre-suit obligations. *Id.* at *8-*10.  The Court echoed this reasoning and concluded that Defendants' Motion should be denied. *Id.* at *10. Although not part of the Court's ruling, the *Norfolk* court's reasoning continued. *Id.* The *Norfolk* court did not run the statute of limitations from the original charge of discrimination. *Id.* For the individuals that had not filed charges of discrimination, the *Norfolk* court ran the statute of limitations from the subsequent notice the EEOC provided the defendant-employer regarding the expanded administrative investigation:

> Thus, the EEOC can only bring an enforcement action against Norfolk on behalf of presently unidentified applicants and employees (here, claiming Norfolk discriminated against them based upon their past drug addiction, drug addiction recovery, and treatment for drug addiction), and on behalf of presently unidentified employees (here, claiming Norfolk discriminated against them based upon their receiving chemotherapy for cancer, having arthritis, and having non-paralytic orthopedic impairments), if the EEOC has alleged, or otherwise established, that it met the requisite statutory pre-suit obligations required by 42 U.S.C. § 2000e-5(b) with respect to the claims of these presently unidentified applicants and employees. Reviewing the amended complaint, and the charge itself the Court finds that with respect to the categories of unidentified applicants and employees at issue in the partial motion to dismiss, the EEOC has satisfied the statutory prerequisites set forth in 42 U.S.C. § 2000e-5(b) prior to filing the claims of these presently unidentified applicants and employees. Clearly, the presently unidentified applicants and employees who Norfolk allegedly discriminated against (due to their disabilities of past drug addiction, drug addiction recovery, and treatment for drug addiction), as well as unidentified employees who Norfolk allegedly discriminated against (based upon their disabilities of receiving chemotherapy for cancer, having arthritis, and having non-paralytic orthopedic impairments) fall within the broad class of individuals covered by **this expanded investigation, and these classes of claimants would have been part of the same 42 U.S.C. § 2000e-5(b) pre-suit process as the other claims covered by the investigation described in the November 14, 2012 letter.**[5] The EEOC has alleged it made efforts at conciliation to endeavor to eliminate the alleged unlawful employment practices and provide appropriate

---

[5] "The EEOC notified Norfolk it was consolidating its investigation of 17 individual ADA charges and that it was expanding the scope of its investigation to include Norfolk's compliance with the ADA in connection with other "possible aggrieved persons" on November 14, 2012 via a letter." *Norfolk S. Corp.*, 2018 WL 4334615, at *5.

>relief and that it provided notices of failure of conciliation. (ECF No. 17 at ¶¶ 15-18.)

*Id.* What the *Norfolk* court did is exactly what Defendants asked this Court to do. The only difference is that, unlike in *Norfolk*, the EEOC never notified Defendants—any Defendant—of an expanded investigation. According to the EEOC, that notice did not come until it issued Defendants the Letter of Determination. (Response, Doc. 48, PageID 305.) According to the *Norfolk* court's full analysis and holding, that would then be the date (the date of the Letter) that sets Title VII's statute of limitations. *Norfolk*, like *Princeton* and *Freeman*, all support Defendants' timeliness arguments. The Court should reconsider its Order and, at a minimum, apply *Norfolk* in full, not in part.

Still related to whether Defendants received notice of the EEOC's expanded investigation, the Court next examined and rejected Defendants' arguments related to Mr. Alvarez not being a member of the "class" alleged by the EEOC. The Court explained that Defendants' position that "because Alvarez is a Hispanic man, he could never be involved in this lawsuit on behalf of a class of Black job applicants" is "incorrect as a matter of law." (Doc. 52, PageID 350.) In support, the Court cited to *E.E.O.C. v. Bailey Co.*, 563 F.2d 439, 454 (6th Cir. 1977), *disapproved of by Christiansburg Garment Co. v. EEOC on other grounds*, 434 U.S. 412 (1978), and summarized that the case found "a white woman had standing to allege racial discrimination against black women by her employer in an EEOC complaint." (*Id.* at PageID 350.) *Bailey*, however, does not allow a Hispanic male to represent a "class" of Black job applicants in an enforcement action filed by the EEOC. As the Sixth Circuit later made clear, *Bailey* applies to the administrative process:

>At the same time, however, we concluded in Bailey that allowing the EEOC to sue for matters beyond those reasonably expected to arise from the original charge would undermine Title VII's enforcement process. In particular, we

>understood that an original charge provided an employer with "notice of the allegation, an opportunity to participate in a complete investigation of such allegation, and an opportunity to participate in meaningful conciliation discussions should reasonable cause be found following the EEOC investigation." Id. at 448. **We believed that the full investigatory process would be short-circuited, and the conciliation process thereby threatened, if the EEOC did not file a separate charge and undertake a separate investigation when facts are learned suggesting an employer may have engaged in "discrimination of a type other than that raised by the individual party's charge and unrelated to the individual party.**"

*Equal Emp. Opportunity Comm'n v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 598 (6th Cir. 2018), *aff'd sub nom. Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020) (emphasis added).  Mr. Alvarez did not file a charge of discrimination on behalf of Black individuals.  Regardless of whether he could have under *Bailey*, he did not.  The EEOC does not even argue that he did.  The Court's ruling expands *Bailey* so as to now sustain the scope of this action.  Defendants submit that this is beyond the holding in *Bailey*, as the Sixth Circuit subsequently made clear.  *Bailey* neither sets nor informs the scope of an EEOC enforcement action, nor whether or when subsequent claims are timely filed.  The Court should reconsider its Order and, at a minimum, apply *Bailey* as clarified by the Sixth Circuit, not as expanded.

Finally, in concluding, the Court again stated that "a complaint filed by the EEOC is limited to the investigation reasonably expected to grow out of the initial charge of discrimination." (Doc 52, PageID 351 (*citing EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1101 (6th Cir. 1984)).  Here, again, however, in *Keco*, the individual filing the charge (a female) was a member of the expanded class of females.  *See* 748 F.2d at 1098.  Mr. Alvarez, a Hispanic male, is not and cannot be included in any grouping based on Race (Black/African American).  To expand *Keco* to apply to this case—a case in which the individual that filed a charge of discrimination is not even a member of the alleged "class" on behalf of whom the EEOC later

filed suit—this, Defendants submit, expands *Keco* too far.  The Court should reconsider its Order and, at a minimum, apply *Keco* as decided by the Sixth Circuit, not as expanded

Upon reconsideration, whether for each or every reason above, the Court should dismiss Count I and Count II as barred by Title VII's statute of limitations.

### 3. In allowing the EEOC to maintain Count III under Section 709(c), the Court's ruling conflicts with the plain language of Title VII.

With respect to Count III, the Court found that the EEOC adequately pleaded a claim for violation of Section 709(c). (Doc 52, PageID 351-353.)  The Court did not address Defendants' argument that there is no cause of action for violation of Section 709(c).  The Court, instead, addressed Defendants' alternative argument—that even if Section 709(c) applies in the way the EEOC has invoked it, Defendants had no obligation to maintain anything in a specific format.  (*See* Doc. 52, PageID 351-353.)  Upon reconsideration of Defendants' principle argument, not its alternative argument, Count III should be dismissed with prejudice.

The Court, as the EEOC did in its Amended Complaint, allowed Count III to proceed past dismissal by relying on the regulation implementing Section 709(c), 29 C.F.R. § 1602.14.  The EEOC, however, has no authority to bring suit on behalf of a regulation. *See*, *e.g.*, *Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167, 178 (2005) ("[W]e do not rely on the Department of Education's regulation at all, because the statute *itself* contains the necessary prohibition") (emphasis in original); *Grupo Indus. Camesa v. United States*, 85 F.3d 1577, 1579 (Fed. Cir. 1996) ("It is axiomatic that a regulation cannot expand the scope of the statute under which it is promulgated.").  Accordingly, upon reconsideration, Count III should be dismissed with prejudice.

Moreover, Section 709 does not broadly apply to Title VII.  It is not generally applicable. Section 709(a) provides that Section 709 applies only "[i]n connection with any investigation of

a charge." 42 U.S.C. § 2000e-8(a). Here, any EEOC investigation has concluded. (Doc. 41 at PageID 257-258.) That is why the EEOC filed suit. There is no ongoing investigation and none is alleged. Defendants cannot be ordered to maintain records in connection with an investigation that does not exist. It is implausible. Furthermore, to do so would be to convert Section 709 into a general record-keeping statute, which it is not. In opposing Defendants' Motion, the EEOC did not argue or analyze whether or to what extent a claim or cause of action exists under Section 709(c). The EEOC, instead, relied on its own implementing regulations. An approach the Supreme Court has rejected. *See Jackson*, 544 U.S. at 178. Like above, upon reconsideration, Count III should be dismissed with prejudice.

### C. In the alternative, Defendants move the Court to certifying for interlocutory appeal legal questions arising out of its Order.

In the absence of reconsideration, Defendants respectfully ask the Court to certify for interlocutory appeal the following legal questions arising out of the Court's Order:

1. What constitutes notice to an employer of an expanded administrative investigation by the EEOC so as to set/toll Title VII's statute of limitations for claims against the employer that arise out of that expanded administrative investigation?

2. Whether a Title VII charge of discrimination charging National Origin discrimination and retaliation can provide notice to an employer of an EEOC administrative investigation into claims of Race-based discrimination such that the filing of that charge sets/tolls Title VII's statute of limitations for any resulting Race-based discrimination claim against the employer?

3. If so, in this case, as pleaded, whether the relevant charge of discrimination provided sufficient notice to Defendants of an EEOC administrative investigation into the Race-based discrimination claims now alleged by the EEOC such that the filing of the charge sets/tolls Title VII's statute of limitations for the Race-based claims against Defendants?

4. What is the scope of a "record keeping" claim brought by the EEOC under Section 709(c) of Title VII, including whether such a claim can be brought

>by the EEOC not during but following the conclusion of its administrative investigation?

In enacting Title 28, United States Code, Section 1292, Congress recognized "that the orderly administration of justice is frustrated when the parties are forced to grind toward a final judgment before they can challenge the correctness of some isolated, but determinative, question of law." *West Tennessee Chapter of Assoc. Bldrs. and Contractors v. City of Memphis*, 138 F. Supp.2d 1015, 1019 (W.D. Tenn. 2000). Thus, an interlocutory appeal under Section 1292(b) is appropriate where: "(1) a controlling legal question is involved; (2) there is substantial ground for difference of opinion regarding it; and (3) an immediate appeal would materially advance the litigation's ultimate termination." *In re Baker & Getty Fin. Servs.*, 954 F.2d 1169, 1172 (6th Cir. 1992). All three requirements are met here.

One, the jurisdictional and procedural questions constitute controlling legal questions. "[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could 'materially affect the outcome of litigation in the district court." *In re Baker & Getty*, 954 F.2d at 1172, n.8. It is well-settled that where "resolution of the question being challenged on appeal will terminate the action in the district court, it is clearly controlling." 19 *Moore's Federal Practice*, §203.31 [2] (3d. Ed.); *see also Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2nd Cir. 1990), *vacated on other grounds*, 937 F.2d 44 (2d Cir. 1991); *APCC Services v. Sprint Communications,* 297 F. Supp.2d 90, 96 (D.D.C. 2003) (collecting cases). Here, if the jurisdictional and procedural questions are resolved on appeal in Defendants' favor, it would terminate these proceedings. Accordingly, the jurisdictional and procedural questions constitute controlling legal questions, and the first requirement weighs in favor of certifying the legal questions for interlocutory appeal.

Two, there is substantial ground for a difference of opinion regarding the jurisdictional and procedural questions. Respectfully, Defendants need not demonstrate that the Court's decision is incorrect as a matter of law. Rather, the question is whether the issue of law is "debatable." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 46 (1995) (Section 292(b) allows for "immediate appeal [of] interlocutory orders deemed pivotal and debatable.") A "debatable" showing is made when: (1) there is conflicting authority on the issue; (2) the issue is particularly difficult and of first impression; **or** (3) a difference of opinion exists within a controlling court. *City of Memphis*, 138 F. Supp. 2d at 1019. At minimum, here, the jurisdictional and procedural questions are particularly difficult. Furthermore, although Defendants consider the authorities on which they rely to be controlling, the Court may disagree. If it does, then the jurisdictional and procedural questions will constitute questions of first impression. Thus, the second requirement is met and weighs in favor of certifying the legal questions for interlocutory appeal.

Finally, an immediate appeal would materially advance the litigation's ultimate termination. As one Circuit Court explained, this requirement "is not a difficult requirement to understand[; it] means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin v. Conseco Services, LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004); *see also City of Memphis,* 138 F. Supp. 2d at 1026. This requirement should not be in dispute. As noted, if the jurisdictional and procedural questions are resolved on appeal in Defendants' favor, it would terminate these proceedings. Accordingly, the third and final requirement weighs in favor of certifying the legal questions for interlocutory appeal.

Upon reconsideration, should the Court decline to grant Defendants' Motion to Dismiss in full, Defendants the Court to certify the identified legal questions for interlocutory appeal.

### III. CONCLUSION

Based on the foregoing arguments and authorities, Defendants' respectfully asks the Court to award the relief requested in this Motion, and for any additional relief the Court deems warranted under the circumstances.

Respectfully submitted, this, the 13th day of October, 2023.

*s/ Zachary B. Busey*
**ZACHARY B. BUSEY**
Tennessee Bar No. 29763
zbusey@bakerdonelson.com

**WHITNEY M. DOWDY**
Tennessee Bar No. 24985
wdowdy@bakerdonelson.com

**MARY KATHERINE SMITH**
Tennessee Bar No. 35328
mkcampion@bakerdonelson.com

**DEAN J. SHAUGER**
Tennessee Bar No. 39746
dshauger@bakerdonelson.com

BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
(901) 526-2000 – telephone

*Attorneys for Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

This, the 13th day of October, 2023.

*s/ Zachary B. Busey*
**ZACHARY B. BUSEY**