**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:22-cv-02668-SHL-tmp |
| SUPREME STAFFING LLC; BETTER PLACEMENTS PERSONNEL LLC; and INSPIRE HOTEL STAFFING LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION
TO BIFURCATE TRIAL AND DISCOVERY**

Before the Court is Plaintiff Equal Employment Opportunity Commission's (the "EEOC") Motion to Bifurcate Discovery and Trial, filed August 30, 2023. (ECF No. 56.) Defendants Supreme Staffing LLC, Better Placements Personnel LLC, and Inspire Hotel Staffing LLC (the "Defendant Employers"), filed their response on September 22, 2023. (ECF Nos. 60 & 61.) With leave of Court, the EEOC filed a reply on October 12, 2023. (ECF No. 65.) For the following reasons, the motion is **DENIED WITHOUT PREJUDICE**. The EEOC may renew its motion at the close of discovery.

## BACKGROUND

This case involves allegations that Defendants engaged in unlawful employment practices that violated Title VII of the Civil Rights Act of 1964, and the Section 102 of the Civil Rights Act of 1991. (See Amended Complaint, ECF No. 41.) The three-count Amended Complaint alleges that Defendant Employers, three Memphis-based staffing agencies functioning as an integrated enterprise, violated Title VII in multiple ways.

In Count I, the EEOC alleges that hiring data from 2018 through 2021 reveals that Defendant Employers selected, referred, placed and assigned Hispanic applicants and employees at a disproportionately higher rate than Black applicants and employees for jobs that included picker, loader-unloader, forklift operator, and general warehouse worker.  (Id. at PageID 260–62.)  Count II alleges that Defendant Employers discriminated against Black employees by assigning them to less desirable and lower-paying positions.  (Id. at PageID 264.)   The Amended Complaint identifies specific individuals who were allegedly discriminated against consistent with the allegations found in both Counts I and II, and the EEOC asserts that the pool of other impacted individuals numbers in the hundreds or thousands.  (See ECF No. 41; ECF No. 56-1 at PageID 376–77.)  Finally, Count III asserts that Defendant Employers failed to preserve records that are relevant to the determination of whether they have been or are committing unlawful employment practices.  (ECF No. 41 at PageID 265–66.)

## LEGAL STANDARD

Under the Federal Rule of Civil Procedure, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  Fed. R. Civ. P. 42(b).  Only one of these criteria need be met to justify bifurcation.  Saxion v. Titan-C-Mfg., Inc., 86 F.3d 553, 556 (6th Cir. 1996) (citing MCI Commc'ns Corp. v. Am. Tel. & Tel. Co., 708 F.2d 1081, 1177 (7th Cir. 1983)).  Courts consider several additional factors in determining whether bifurcation is appropriate, including "the possible confusion of the jury, whether the evidence and issues sought to be bifurcated are substantially different, and whether bifurcation would enhance settlement."  Farmers Bank of Lynchburg, Tenn. v. BancInsure, Inc., No. 2:10-cv-02222-dkv, 2011 WL 2023301, at *1 (W.D. Tenn. May 20, 2011) (citing Wilson v. Morgan, 477 F.3d 326,

339 (6th Cir. 2007); Kelley v. Steel Transport, Inc., 2011 WL 1690066, *4 (E.D. Mich. May 4, 2011)).

"[T]he party moving to bifurcate bears the burden of demonstrating that bifurcation is appropriate." Id. (citation omitted). "The Sixth Circuit has determined that the decision to grant or deny bifurcation is well within the discretion of the trial judge." SCF, LLC v. Hartford Fire Ins. Co., No. 1:20-cv-01173-JDB-jay, 2021 WL 4206624, at *3 (W.D. Tenn. Sept. 15, 2021) (citing Saxion, 86 F.3d at 556). "Bifurcation is the exception to the general rule that disputes should be resolved in a single proceeding and should be ordered only in exceptional cases." Woods v. State Farm Fire & Cas. Co., No. 2:09-CV-482, 2010 WL 1032018, at *1 (S.D. Ohio Mar. 16, 2010) (citation omitted).

## ANALYSIS

The EEOC seeks to bifurcate the case into a first phase involving discovery and a trial that focuses on whether "Defendant Employers engaged in a pattern or practice of discrimination and other questions that are susceptible of a class-wide resolution." (ECF No. 56-1 at PageID 375.) Phase II would include discovery and a trial focusing on issues related to individual class members. (Id.) Bifurcating the case would promote a more efficient resolution of the case, according to the EEOC, by offering a focused discovery period and trial in Phase I and postponing a larger volume of discovery and the trial on individualized matters until Phase II. (Id. at PageID 376.)

The EEOC further argues that if the jury finds that there is not a pattern or practice of discrimination under either or both of Counts I and II, the scope of Phase II would be significantly narrowed. (Id.) Moreover, the EEOC suggests that bifurcating the case this way could potentially save resources because it would afford the Parties the opportunity to settle the

matter between Phases I and II.  The EEOC asserts that "attempting to address all relevant issues in a single, undifferentiated discovery period followed by an extremely long trial would be unwieldy and would make it more likely that the resolution of this action will require more time and resources than if this matter is bifurcated."  (Id.)  Ultimately, the EEOC's "position merely is that there is no need to engage in discovery for hundreds, potentially thousands, of claimants until after a jury has determined whether a pattern or practice of discrimination exists."  (ECF No. 65 at PageID 444.)

Defendant Employers counter that bifurcation is premature given that discovery has yet to commence.  Even more, they assert that an evaluation of the bifurcation factors under Rule 42 weighs against granting the motion.  (ECF No. 61 at PageID 422–26.)  Defendant Employers further argue that, to the extent that the EEOC bases its arguments on the fact that courts commonly employ a bifurcated approach in pattern-and-practice cases, that argument is misplaced because the EEOC brings its claims under Section 706 of Title VII, and not Section 707.  (Id. at PageID 421.)  The Defendant Employers also contend that bifurcating the case as Plaintiff suggests would violate the Rules Enabling Act, because it would modify and abridge Defendant Employers' substantive rights.  (Id. at PageID 420, 426–27.)

As is explained in more detail below, the EEOC's motion is both premature and fails to carry its burden that it is entitled to bifurcation under Rule 42, pretermitting consideration of the Defendant Employers' remaining arguments.

## I.      The Prematurity of the Motion

Defendant Employers assert that the motion is premature because discovery is incomplete.  (See ECF No. 61 at PageID 422 (citing, e.g., Gaffney v. Fed. Ins. Co., 2008 WL

3980069 (N.D. Ohio Aug. 21, 2008); <u>Rosen v. Reckitt & Colman, Inc.</u>, 1994 WL 652534 (S.D.N.Y. Nov. 17, 1994); <u>Krueger v. N.Y. Tel. Co.</u>, 163 F.R.D. 446 (S.D.N.Y. 1995)).)

Although the EEOC argues that the motion practice that the parties have engaged in distinguishes this case from those cited by Defendant Employers, the absence of any discovery here reveals that those cases are more similar than different.  Although the parties had yet to engage in any motion practice in <u>Gaffney</u>, in both that case and this one,  "[m]any of the facts and circumstances that are relevant to the balancing of interests required of the Court in exercising its discretion to bifurcate are unknown at this time."  2008 WL 3980069, at *3.

Moreover, the EEOC's argument that the Employer Defendants discriminated against perhaps thousands of individuals appears to be based on data gleaned from Tempworks, the Defendant Employers' payroll processor.  (<u>See</u> ECF No. 41 at PageID 261–62.)  Additional discovery related to those records—as well as other discovery—might reveal that the concerns articulated in the EEOC's motion about the vast amount of resources that would need to be expended absent bifurcation are overstated or misplaced.  It may also serve to undermine the EEOC's contention that Defendant Employers engaged in a pattern or practice of discrimination. <u>See  Rosen</u>, 1994 WL 652534, at *4 (explaining that limiting the defendants to ten or twenty depositions might render "anecdotal exculpatory information . . . <u>entirely</u> undiscovered" and further explaining that, "[w]ithout significant individual testimony to support statistical evidence, courts have refused to find a pattern or practice of discrimination") (citation omitted).

At the same time, additional discovery might establish the need for bifurcation, at least in terms of conducting two trials, the first that speaks to whether a pattern-and-practice of discrimination is present, and the second that focuses on individuals who were subject to discrimination.  At this point in the case, however, there is not enough information before the

Court to make such a determination.  Because there is not, the EEOC's motion is **DENIED**

**WITHOUT PREJUDICE**.  The EEOC shall be allowed to renew the motion at the close of

discovery, if appropriate.

## II.      The Rule 42(b) Criteria

Even if the motion were not premature based on the lack of discovery thus far conducted,

denial would still be appropriate under Rule 42(b).  The EEOC asserts that bifurcation is justified

because "multiple Rule 42(b) criteria have been met" (ECF No. 56-1 at PageID 378), but fails to

specifically describe which of those factors it is referring to.  Instead, the bulk of its motion

outlines the mechanics of how bifurcation would work in this case, relying on cases in which

similar procedures have been employed.[1]  Nevertheless, the crux of the EEOC's argument for

bifurcation is that it would promote judicial economy and, perhaps relatedly, convenience.  It

also asserts that bifurcation would increase the likelihood of settlement.  Those factors are

evaluated below.

### A.      Judicial Economy and Convenience[2]

The EEOC repeatedly asserts that judicial economy would be served through bifurcation.

Embedded within its arguments related to judicial economy are those that suggest that it would

---

[1] The Parties dispute the applicability of the decision from one of those cases, Serrano v. Cintas Corp., 699 F.3d 884 (6th Cir. 2012).  Defendant Employers assert that "[t]he Serrano decision is hotly debated and critiqued within other Circuits.  Defendants disagree with it—and note their objection to it—but accept it as a published decision from the Sixth Circuit."  (ECF No. 61 at PageID 418 n.6.)  The EEOC relies on Serrano to assert that the Court should apply the approach from International Brotherhood of Teamsters v. United States, 431 U.S. 324 (1977), which provides that dividing such cases into liability and remedial phases can clarify the various burdens and complexities of a pattern-or-practice case.  Nothing prevents the Court from employing that approach, but, as Defendant Employers assert, Serrano "does not require bifurcation of any kind in any action filed by the EEOC."  (ECF No. 61 at PageID 418.)

[2] The EEOC does not specifically address the 42(b) factor of avoiding prejudice.  The moving party must make a "specific showing" when arguing that the potential for undue prejudice justifies bifurcation.  Blanchard, 2017 WL 5957815, at *3 (W.D. Tenn. Mar. 31, 2017)

be more convenient to conduct this matter in multiple phases.  But the EEOC overstates, especially at this stage of the proceedings, the benefits that bifurcation would provide.

According to the EEOC, "[i]f there is no pattern-or-practice finding in Phase I, the parties would only have to conduct discovery on liability and damages for a significantly smaller pool of potential aggrieved individuals for whom the Commission would expect to prove discrimination on an individual basis, without the benefit of a pattern-or-practice finding."  (ECF No. 56-1 at PageID 384.)  The EEOC also proposes a plan whereby "any depositions of such individuals in Phase I should encompass all issues relevant to those individuals, including damages and individual claims and defenses," which "would eliminate the need to depose some individuals twice, first for liability and then for damages."  (Id. at PageID 383.)  It also asserts that "[i]f the jury is not persuaded that the Commission has met its burden in Phase I, the parties would not need to get into the weeds of individual remedial issues for most aggrieved individuals in Phase II."  (Id. at PageID 386.)

As a starting point, although the EEOC's plan would allow for cabining some of the necessary discovery into each Phase, there would inevitably be overlap between the two phases. For instance, as Defendant Employers point out, mitigation evidence would be relevant in both Phase I and Phase II.  Even more fundamentally, however, assuming a jury found an absence of a pattern-or-practice of discrimination during Phase I, the EEOC has offered no indication as to how it would go about limiting the pool of potential aggrieved individuals that would be subject to discovery and participation in a trial during Phase II, or why the absence of such a finding would automatically narrow the universe of potential victims of discrimination.  The EEOC

_____

(citing Woods v. State Farm Fire & Cas. Co., No. 2:09-cv-482, 2010 WL 1032018, at *3 (S.D. Ohio Mar. 16, 2010)).  The EEOC has not done so here.

offers no support for its contention that this group is "likely dramatically smaller." (ECF No. 56-1 at PageID 375.)

If a determination that there is not a pattern-or-practice of discrimination in Phase I did limit the scope of discovery and the length of a trial in Phase II, even the EEOC acknowledges that it would not altogether eliminate the need for a Phase II.[3]  This is not, in other words, a case where deciding the issues the EEOC marks for determination in Phase I would dispose of the entire litigation.  See Periodontal Assocs. of Memphis, P.C. v. Peerless Indem. Ins. Co., No. 16-CV-2751-SHM-tmp, 2017 WL 4122623, at *4 (W.D. Tenn. Sept. 18, 2017) (bifurcating legal claims from factual claims for trial).

Unlike in Blanchard, where the court explained that "[b]ifurcation would only promote judicial economy if Defendant succeeds on the threshold issues; otherwise, the Court would be faced with two discovery phases and potentially two trials," 2017 WL 5957815, at *2, there will likely be two discovery phases and two trials no matter the outcome of Phase I.  For even if the Defendant Employers "prevail" during Phase I of the trial in terms of there being a finding that they did not engage in a "pattern-or-practice" of discrimination, the EEOC will proceed with Phase II.  Moreover, the scope of Phase II remains unclear.  In fact, the breadth of the discovery needed in Phase II might not be impacted significantly if a jury were to determine that there was no pattern-or-practice of discrimination.  As the EEOC acknowledges, "[t]he proof of the pattern or practice supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy." Int'l Bhd. of

---

[3] Based on the need for a Phase II no matter the outcome of Phase I, the Employer Defendants argue, with some persuasiveness, that "[t]he EEOC's bifurcation request is not about judicial economy at all.  It is about having multiple bites at the apple." (ECF No. 61 at PageID 426.)

Teamsters v. United States, 431 U.S. 324, 362 (1977).  Armed with such an inference, "[t]he Government need only show that an alleged individual discriminatee unsuccessfully applied for a job and therefore was a potential victim of the proved discrimination," before "the burden then rests on the employer to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons."  Id.

So, a finding of no pattern or practice might not diminish the amount of discovery needed in Phase II because the Parties would not be starting with an inference that discrimination was present for whichever employees the EEOC asserts faced discrimination among the Phase II group.  It is possible that, absent a pattern-or-practice finding in Phase I, the EEOC would, as it suggests, "present in Phase II only the likely much smaller number of individual claims that could be proven even in the absence of a pattern-or-practice finding."  (ECF No. 56-1 at PageID 386.)  However, it again is not clear that the process of identifying that narrower universe of potential individuals would be streamlined by such a Phase I finding, and there may remain a large number of people with viable claims after that Phase I determination.  In addition, and if past is prologue in this case, multiple rounds of discovery means multiple rounds of discovery disputes between the Parties, the opposite of judicial efficiency.

Here, as in Blanchard, bifurcation would not promote judicial economy or the convenience of the parties and would instead prolong the case.  The judicial economy factor weighs against bifurcation.

      B.     <u>Enhancing Settlement Possibilities</u>

It is possible that the chances of settlement would increase if the case is bifurcated consistent with the EEOC's proposal, as it argues in its motion, and as it suggests has been its experience in other cases.  That alone, however, is not enough to warrant granting the motion,

especially given that the EEOC's other arguments related to the 42(b) factors weigh against bifurcation.

The EEOC's arguments on this point rest mostly on speculation and hypotheticals. According to the EEOC, if there is not a pattern-and-practice finding, the Parties could adopt expedited procedures for determination of individual claims, including such things as alternative dispute resolution after Phase I, the use of special masters or arbitrators, or combining appropriate groups of claimants to try together.  (Id. at PageID 384.)  Although such an approach would potentially minimize judicial resources during Phase II or, for that matter, obviate the Court's need to have much of any role in the Phase II at all, that is no guarantee.  Those proposals may result in the expenditure of more resources, not fewer, in fact, in the absence of a settlement.

The EEOC also suggests that "bifurcation would also give the parties a natural opportunity to reach a negotiated settlement based on the outcome of Phase I."  (Id. at PageID 376.)  Of course,  nothing prevents the Parties from engaging in settlement negotiations during the discovery period, at the conclusion of discovery when the evidence becomes more clear, or, for that matter, before or after dispositive motions are filed in the case.  At this point, however, there is no way to tell.

It is possible, as the EEOC suggests, that the likelihood of settlement would increase if the Court orders the bifurcation the EEOC seeks.  There is nothing to suggest that the likelihood of settlement would be greater at that point, however, than at any other point in this litigation, including once discovery is complete and the Parties have the opportunity to evaluate it in relation to their respective positions.  This factor tilts slightly in the EEOC's favor.  It does not,

however, outweigh the absence of a demonstration of the other factors that would warrant
bifurcation under Rule 42(b).

## CONCLUSION

The burden is on the EEOC, as the Party seeking bifurcation, to demonstrate that this is
the sort of exceptional case that warrants upending the general rule that disputes should be
resolved in a single proceeding.  See Fed. R. Civ. P. 42(b); Woods, 2010 WL 1032018, at *1
(S.D. Ohio Mar. 16, 2010).  The EEOC has failed to do so here.  It is possible that, when
discovery is complete, the Court's conclusion may be different.  For that reason, the motion is
**DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED,** this 18th day of March, 2024.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE